PEERLESS INSURANCE COMPANY ET AL. *v.* THOMAS J. TUCCIARONE ET AL.

CNA INSURANCE COMPANY ET AL. *v.* THOMAS J. TUCCIARONE ET AL.

NEW LONDON FEDERAL SAVINGS BANK ET AL. *v.* THOMAS J. TUCCIARONE ET AL.

WALTER R. SOLOMONS ET AL. *v.* THOMAS J. TUCCIARONE ET AL.
(AC 16261)

Landau, Spear and Daly, Js.

---

Argued November 12, 1997—officially released March 17, 1998

*Michael D. O'Connell,* with whom, on the brief, were *Kevin J. Greene* and *Julia B. Morris,* for the appellants (named defendant et al.).

*William H. Narwold,* with whom was *Holly Winger,* for the appellee (third party defendant Advance Transformer Company).

LANDAU, J. This is a consolidated appeal following the trial court's granting of motions for summary judgment in four cases consolidated for trial. The motions for summary judgment were granted in favor of the defendant-third party defendant Advance Transformer Company (Advance)[1] against the defendant owners of commercial real estate that was destroyed by fire.[2] On appeal, the owners claim that the trial court improperly granted summary judgments because genuine issues of material fact exist as to when the time commences to run so as to bar the owners' product liability claims against Advance. We affirm the trial court's granting of summary judgments.

The lawsuits that form the basis of this appeal arise out of a fire that occurred on September 30, 1988, in Flanders Plaza in East Lyme, which is owned by the defendants Thomas J. Tucciarone, Michael J. DiProspero, Kaj Snellman and the Snellman Limited Partnership (owners). The plaintiffs, numerous tenants of the premises and their insurance carriers, alleged that the owners are liable to them for the fire losses they sustained because the owners (1) negligently maintained the premises and (2) created a nuisance on the premises. In January, 1992, the owners asserted two claims against Advance: one for their own losses brought pursuant to the product liability statutes, General Statutes § 52-572m et seq., and one for indemnification of the claims of loss asserted by the plaintiffs. The owners claim that Advance, as the manufacturer of the ballast in a lighting fixture where the fire started, was responsible for all losses related to the fire.

[1] In three of the cases, Advance was impleaded as a defendant and the owners cross claimed against them; in the fourth case, the owners filed a third party complaint against Advance.

[2] There were additional defendants in all four cases, but those parties are not relevant to these appeals.

On August 4, 1992, Advance filed answers and five special defenses to the owners' claims. The relevant special defenses allege that the owners' claims are "barred by the applicable statute of limitations."[3] In July, 1993, Advance filed a motion for summary judgment in each of the consolidated cases, arguing that the owners' claims were barred by the statute of limitations, General Statutes § 52-577a (a), because they were not brought within three years of September 30, 1988. The owners objected to the motions for summary judgment, claiming that the statute of limitations did not run until a causal nexus between the act and the injury was discovered, i.e., January, 1991, when an expert, Beth Anderson, retained by the owners' insurance carrier stated that the ballast manufactured by Advance had caused the fire. The trial court granted Advance's motions for summary judgment, ruling that even assuming the statute of limitations did not run until the causal connection was discovered, "the statute of limitations began to run no later than October 20, 1988, when the deputy fire marshal issued his opinion that the cause of the fire was the defective ballast." This appeal followed.

Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. See *Scinto* v. *Stamm*, 224 Conn. 524, 530, 620 A.2d 99, cert. denied, 510 U.S. 861, 114 S. Ct. 176, 126 L. Ed. 2d 136 (1993). "Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[3] Although it is not mandatory, we note that the preferred manner of pleading is to identify specifically the number of the statute relied on; see Practice Book § 109A (a); so that the issue will be clarified for the benefit of all interested parties, including the court. See *Federal Deposit Ins. Corp.* v. *Bombero*, 37 Conn. App. 764, 768 n.9, 657 A.2d 668 (1995), appeal dismissed, 236 Conn. 744, 674 A.2d 1324 (1996); see also *Rowe* v. *Godou*, 209 Conn. 273, 275, 550 A.2d 1073 (1988).

as a matter of law. . . . While the burden of showing the nonexistence of any material fact is on the party seeking summary judgment . . . the party opposing [summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) *Cortes* v. *Cotton*, 31 Conn. App. 569, 572–73, 626 A.2d 1306 (1993).

"Equally well settled is that the trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Field* v. *Kearns*, 43 Conn. App. 265, 270, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996). With these principles in mind, we proceed with our analysis.

I

The defendant owners first claim that the trial court improperly determined that no genuine issue of material fact existed as to when the time commences to run so as to bar the owners' product liability claim pursuant to § 52-577a (a). That section provides in relevant part that "[n]o product liability claim . . . shall be brought but within three years *from the date when the . . . property damage is first sustained or discovered . . . .*" (Emphasis added.) The owners maintain that when a claim is governed by a "discovery" statute of limitations, such as the one at issue, the limitation period does not begin to run until the injured party has discovered or should have discovered the causal

relationship between the product seller's acts or omissions and their adverse effect on the injured party.

Our Supreme Court has not had occasion to construe the discovery language of § 52-577a (a). The owners argue, however, that the language of § 52-577a (a) is identical to the discovery language of the negligence statute of limitations set forth in General Statutes § 52-584,[4] which our Supreme Court has had occasion to interpret. Assuming, arguendo, but without deciding, that our Supreme Court would give the discovery language of § 52-577a (a) the same judicial gloss it gives to § 52-584, we find, given the facts of this case, that the owners' product liability claims against Advance are time barred nonetheless.

In support of their argument, the owners cite two Supreme Court cases that are relevant,[5] *Catz* v. *Rubenstein*, 201 Conn. 39, 513 A.2d 98 (1986), and *Burns* v. *Hartford Hospital*, 192 Conn. 451, 472 A.2d 1257 (1984). Each is a medical malpractice case in which motions for summary judgment were granted pursuant to § 52-584. In *Burns*, the parents of a young child became aware of a streptococcal infection in his leg in November, 1975, caused by a contaminated intravenous tube. After the child was treated, the parents were told the child would fully heal with time. In August, 1977, the parents took their child to another physician who attributed the failure of the child's leg to develop to scar tissue related to the infection. Suit was commenced against the alleged tortfeasors in November, 1978.

[4] General Statutes § 52-584, titled, "Limitation of action for injury to person or property," provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years *from the date when the injury is first sustained or discovered* . . . ." (Emphasis added.)

[5] Other cases cited by the owners are not relevant because they concern either a common-law product liability claim or personal injury claims involving latent injuries or damage to property resulting from a latent defect.

*Burns* v. *Hartford Hospital*, supra, 453. Summary judgment was granted because suit was not brought within two years of the parents' being told the infection was caused by the contaminated intravenous tube. Our Supreme Court affirmed the judgment, reasoning that "[t]he statute requires that the injured party bring suit within two years of discovering the injury. General Statutes § 52-584. In this context an injury occurs when a party suffers some form of actionable harm. The harm need not have reached its fullest manifestation before the statute begins to run." Id., 460.

Our Supreme Court further explained actionable harm in *Catz* v. *Rubenstein*, supra, 201 Conn. 39, where a woman went to her physician in July, 1979, because of a lump in her breast. She was told her mammogram was negative for cancer. After she found a second lump, the woman went to another physician who, on May 1, 1980, performed surgery and diagnosed cancer. In April, 1982, a third physician told the woman that the August, 1979 lump was related to her cancer. The woman commenced suit against the first physician in June, 1982. Id., 40–42. The trial court granted summary judgment because the suit was not brought within two years of May 1, 1980. Id., 42. In reversing the judgment, our Supreme Court said: "A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence. Prosser & Keeton, Torts (5th Ed.) § 30, pp. 164–65; *Calderwood* v. *Bender*, 189 Conn. 580, 584, 457 A.2d 313 (1983); *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 375, 441 A.2d 620 (1982); *Busko* v. *DeFilippo*, 162 Conn. 462, 466, 294 A.2d 510 (1972); *Moore* v. *Bunk*, 154 Conn. 644, 649, 228 A.2d 510 (1967). They are therefore necessary ingredients for 'actionable harm.' Consequently, the plaintiffs' decedent did not have an 'injury' as contemplated by the statute until she discovered or

in the exercise of reasonable care should have discovered a causal relationship between the defendant's allegedly negligent diagnosis of August, 1979, and subsequent lack of treatment, and the metastasis of her cancer, which she discovered on May 1, 1980. Only then did she sustain 'actionable harm.' *Burns* v. *Hartford Hospital*, supra, [192 Conn. 460]." *Catz* v. *Rubenstein*, supra, 44.

In the case before us, the owners' real estate was destroyed by fire on September 30, 1988. The fire marshal's report, dated October 20, 1988, identified the cause of the fire as the ballast in a lighting fixture. Therefore, following the reasoning of *Burns*, the owners here suffered actionable harm on October 20, 1988, when the fire marshal not only identified the cause of the fire but also the manufacturer of the ballast, Advance. The owners did not have to wait until they received Anderson's report before bringing suit[6] because "harm need not have reached its fullest manifestation before the statute begins to run." *Burns* v. *Hartford Hospital*, supra, 192 Conn 460. "The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." (Internal quotation marks omitted.) *Catz* v. *Rubenstein*, supra, 201 Conn. 47. Because the owners did not bring their product liability claims against Advance until January, 1992, the actions were not commenced within three years of the date when the property damage was sustained or discovered, and, therefore, they are time barred.

## II

The owners' second claim on appeal is that their indemnification claims are governed by General Stat-

[6] Unlike the situation in negligence actions against health care providers, the owners did not have to make reasonable inquiry and provide a certificate of good faith before bringing an action against Advance. See General Statutes § 52-190a.

utes § 52-598a[7] rather than § 52-577a. In light of our decision to affirm the judgments rendered on the jury's verdicts for the defendants in the plaintiffs' cases-in-chief; see *New London Federal Savings Bank* v. *Tucci-arone,* 48 Conn. 89, 709 A.2d 14 (1998); we dismiss the owners' indemnification claims as there is no practical relief that we can afford them.[8] See *Metro Mobile CTS of Fairfield County, Inc.* v. *Dept. of Public Utility Control,* 243 Conn. 235, 702 A.2d 1179 (1997).

The judgments are affirmed.

In this opinion the other judges concurred.

---

[7] General Statutes § 52-598a provides: "Limitation of action for indemnification. Notwithstanding any provision of this chapter, an action for indemnification may be brought within three years from the date of the determination of the action against the party which is seeking indemnification by either judgment or settlement."

[8] At oral argument, the owners claimed that even though there were defendants' verdicts in the cases-in-chief, they were entitled to attorney's fees related to the defense of the plaintiffs' claims. The owners failed, however, to allege attorney's fees in their complaint or to include them in their prayer for relief.