[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. FACTS
The plaintiff, 225 Associates, by its two partners, Michael Creed and Rosario DeBrizzi, and the defendant, the Connecticut Housing Finance Authority (CHFA), entered into a closing on March 17, 1992. The purpose of the closing was to finalize the plaintiff's plans to purchase and renovate a fifty-unit apartment building located at 225 Golden Hill Street (the property) in Bridgeport. In order to do so, the plaintiff borrowed $2,659,000 from CHFA. The CHFA immediately disbursed $1,375,241 to the plaintiff for purposes of "site acquisition." Construction commenced at the property approximately two months after the closing and proceeded smoothly for several months until approximately August of 1992, when the plaintiff began complaining to CHFA that the general contractor, Brack Poitier (Poitier), was being paid for work that was not completed in a workmanlike manner, and that Poitier was not paying his subcontractors with the funds he was receiving. By August of 1992, the plaintiff made the decision to withhold a payment to Poitier due to its concerns. Poitier responded by walking off of the job. The plaintiff then sought to hire a new general contractor, but no further construction was undertaken. The plaintiff then instituted this suit on theories of negligence and breach of contract. The plaintiff also seeks to obtain insurance proceeds received by CHFA when the property was vandalized during construction. The matter was tried to this court on September 24 and 30, 1997, January 5 and 26, 1998, and February 5 and 6, 1998.
 II. TRIAL ISSUES AND FINDINGS A. Count One: Negligence
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . First, it is necessary to determine the existence of a duty, and then, if one is found, it is necessary to evaluate the scope of that duty. . . . The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant CT Page 7806 violated that duty in the particular situation at hand." (Citations omitted; internal quotation marks omitted.) Maffucciv. Royal Park Limited Partnership, 243 Conn. 552, 566,___ A.2d ___ (1998). "A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence Peerless Ins. Co. v. Tucciarone,,48 Conn. App. 160, 166, ___ A.2d ___ (1998).
The plaintiff argues that CHFA was negligent in the manner in which it approved payments to the general contractor. The plaintiff claims that CHFA had a contractual duty pursuant to the closing documents to ensure that Poitier paid his subcontractors, and to properly inspect the property to ensure that funds paid went towards work that was actually and properly completed.
CHFA argues that it had no duty to inspect the premises before authorizing a disbursement payment to be made to the plaintiff. It states that its field inspector, Peter Durante (Durante), typically relied on the opinion of the plaintiff's architect, Charles Jones (Jones), who CHFA claims bore the primary responsibility to inspect the premises on behalf of the plaintiff. CHFA also argues that if the plaintiff was dissatisfied with Poitier's performance, it should not have submitted further applications for advancements to CHFA. CHFA contends that the testimony at trial demonstrates that there were no complaints concerning Poitier's performance until August of 1992. Finally, CHFA argues that it was impossible for it to overpay Poitier, since the plaintiff, and not CHFA, paid Poitier. CHFA also contends that it actually disbursed less than the amount requested by the plaintiff to be paid to Poitier.
 1. The Closing Documents and Requisition Forms Create A Duty on the Part of CHFA's Field Observer
The closing documents include a mortgage deed. (Exhibit 31, Tab 10). One of the conditions of the mortgage deed is that CHFA agrees to advance to the plaintiff the balance of the loan "in installments as the work progresses, the time and amount of each advancement to be at the sole discretion and upon the estimate of the [CHFA], so that when all the work on said Mortgaged Property shall have been completed to the satisfaction of the [CHFA] then the [CHFA] shall, subject to the terms and conditions of this Mortgage, pay over to the [plaintiff] any balance necessary to CT Page 7807 complete the full loan . . . ." (Exhibit 31, Tab 10, p. 3). The closing documents also contained a document entitled "Building Loan Agreement." (Exhibit 31, Tab 12). This document provides in part that the plaintiff "shall make applications for advances of mortgage loan proceeds from the Authority. Applications for advances with respect to construction items shall be for amounts equal to (i) the total value of classes of the work acceptably completed; plus (ii) the value of materials and equipment not incorporated in the work, but delivered to and suitably stored at the site; less (iii) 10 percent holdback and less prior advances." (Exhibit 31, Tab 12 ¶ 4(a)).
Requisition forms were signed by officers of CHFA, as well as the plaintiff's architect and a CHFA field observer. (Exhibit 1). Each requisition was signed by Poitier as the general contractor, Durante as CHFA's field observer, and Jones as the plaintiff's architect. (Transcript, January 27, 1998, p. 30). Poitier, Creed, Jones and Durante all participated in the walk-throughs preceding the signing of a requisition. (Transcript, February 5, 1998, p. 7). On occasion, DeBrizzi would participate in a walk-through. (Transcript, February 5, 1998, p. 121). Poitier would prepare a final copy of the requisition form with his signature, which would then be signed by Jones and Creed, and then Durante would take it back with him to CHFA's offices. (Transcript, February 5, 1998, pp. 7-8). By signing off on requisitions, Durante specifically certified that "the amounts requested herein represent acceptable work and materials . . . ." (Emphasis added.) (Exhibit 1).
2. Durante Signed the Requisition Forms, Thereby certifying that the Amounts Reauested Were for Acceptable Work
Durante testified that if, hypothetically, he performed a "walk-through" of the premises, and believed some work was not performed properly, he would sign the requisition form anyway. (Transcript, September 24, 1997, p. 128). Durante stated explicitly that "[i]f the architect would sign [the requisition] and with his technical background and he said he's accepted it, I would accept it." (Transcript, September 24, 1997, p. 128). Durante further stated he would defer to the architect in such a situation, but that this situation did not arise on the subject project. (Transcript, September 24, 1997, p. 128). Durante described the manner in which he would sign off on requisition forms: "Usually — I used to go to the office once a week and the requisitions to be signed were usually on my desk, and for each project for that month was a package maybe about that high, and CT Page 7808 in it was this — looking for my signature; but everything would be signed before." (Transcript, September 24, 1997, p. 129). This court finds that Durante did not conduct independent inspections of the work performed and given his testimony that he would defer to the architect's superior expertise, it is not clear that Durante had the capability to perform independent inspections.
Poitier also testified that Durante did not sign requisitions in front of Poitier. "He took it back to his office, and after that, I don't know what the process was." (Transcript, January 27, 1998, p. 30). Poitier testified, however, that Durante, as a representative of CHFA, accompanied himself, Creed and Jones on the walk-throughs. (Transcript, February 5, 1998, p. 7). Robert L. Johnson, a senior mortgage underwriting officer for CHFA, testified that the responsibility for bringing a requisition "advance package" lies with the owner/borrower, general contractor, and architect. (Trial, February 6, 1998, pp. 5-6). If CHFA sees that the owner has signed the form, it "begins its own review of the appropriateness of the requests of both the contractor and the owner to see that the request is in accordance with the loan documents." (Trial, February 6, 1998, pp. 6-7). If CHFA sees that the architect has signed the form, this "indicates that the architect's opinion that all requisitioned work was met with the contractor, presumably met with his client, the owner; and has come to his independent decision of the degree to which the project is complete at the time with respect to the monies being asked for and that he's satisfied that there are no disputes and can recommend to his client, the owner, that the advance be processed and reviewed by CHFA." (Trial, February 6, 1998, p. 7).
By signing and certifying requisitions, CHFA impliedly affirms that it has independently inspected the subject work and finds it acceptable. Because Durante testified that he merely rubber-stamped what the owner, general contractor and architect had previously signed off on, CHFA breached its duty to perform independent inspections.
3. No Damages Flow From CHFA's Failure To Inspect
Nevertheless, the CHFA is not liable in negligence. The plaintiff has failed to prove that the failure to perform independent inspections caused it injury. Specifically, the CT Page 7809 plaintiff has failed to prove that any of the work certified by CHFA was incomplete or not performed in a workmanlike manner.
Creed himself testified that during the time that construction was in progress (April-August 1992), he never indicated a problem with Jones or Poitier. (Transcript, September 30, 1997, p. 81). Creed also never informed Jones that he was concerned that Poitier was being paid for work that was not being performed. (Transcript, January 5, 1998, p. 88). Poitier testified that he was never questioned by anyone as to whether he submitted a requisition for work that was not done. (Transcript, January 27, 1998, pp. 30-31). He specifically testified that Jones had never complained about the work performed by Poitier. (Transcript, January 27, 1998, p. 50). Jones testified that he never signed off on a requisition where the work reflected in the requistion was not done, and that he signed off on requisitions only after participating in a walk-through. (Transcript, February 5, 1998, pp. 130-31). Jones also testified that although Creed participated in some of these walk-throughs, Creed never complained about the work being reviewed until August of 1992. (Transcript, February 5, 1998, p. 131).
The fact that the plaintiff failed to complain about the work being performed on the subject property until after Poitier walked off the job cannot be overlooked. This failure to complain about the quality of the progress of the construction before August of 1992 implies that the work was satisfactory to the plaintiff. The plaintiff's own architect verified the quality of Poitier's work, and his final report indicates that even if work was not properly completed initially, it was later repaired or the plaintiff received a credit. (Exhibit 110). Accordingly, although CHFA breached its duty to verify the architect's opinion that all requisitioned work was satisfactorily completed, the plaintiff has failed to show that this breach caused it any damage. Therefore, there was no causation or injury, and the plaintiff cannot recover under count one, alleging negligence.
 B. Count Two: Breach of Contract
The plaintiff alleges in count two that CHFA violated the terms of the Completion Assurance Agreement and the Building Loan Agreement. The Completion Assurance Agreement provides a cash fund by way of a letter of credit for $130,000 and an escrow of $39,790, which were to be used to indemnify the owner or lender for any expenses, loss or damage suffered due to default or CT Page 7810 completion of the project which is not in accordance with the plans or specifications. The plaintiff argues that CHFA breached this agreement by not calling the letter of credit even though Poitier walked off of the job without completing the project. The plaintiff also claims that CHFA breached the Building Loan Agreement which provides the manner in which advances should be requested and under what circumstances payments should be made. The plaintiff contends that CHFA breached the agreement by approving payments totaling $528,000 even though only $332,000 worth of work had been acceptably completed. The plaintiff asserts that this overpayment also caused the loan to become unbalanced, which constituted a separate breach.
CHFA argues that the plaintiff's own architect, Jones, approved all of Poitier's requisitions totaling $528,630, and that even after work on the project had been stopped for several months, Jones believed that Poitier was still owed about $98,000, taking into account all credits that could be awarded to the plaintiff. CHFA also contends that the plaintiff's representatives signed off on the applications for advances, and that the plaintiff did not express any dissatisfaction with Poitier's work until Poitier walked off the job due to nonpayment. CHFA further argues that it could only call the letter of credit if Poitier failed to properly perform under the construction contract. CHFA claims that there was no evidence produced during the trial that Poitier was in default under the contract with the plaintiff, and that if Poitier been allowed to return to the job site, he would have completed his duties under the agreement. CHFA also argues that the letter of credit, which the plaintiff was required to supply, contained a patent defect which rendered it useless.
"The key elements of a breach of contract action are: (1) the formation of an agreement; (2) performance by one part; (3) breach of the agreement by the other part and (4) damages."
Diette v. Dental Group of Norwalk, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 158747 (February 27, 1998, Lewis, J.). Jones related the following facts at trial. The plaintiff first mentioned problems with Poitier not paying subcontractors in August or 1992. (Transcript, February 5, 1998, p. 120). There were no complaints about Poitier until the dispute of the payment of subcontractors arose. (Transcript, February 5, 1998, p. 121). Jones was of the opinion that Poitier's failure to pay the CT Page 7811 subcontractors did not constitute a breach, since Poitier himself was not paid. (Transcript, February 5, 1998, p. 155). Jones never signed off on a requisition before ascertaining that Poitier had performed the work listed on the requisition. (Transcript, February 5, 1998, pp. 130-31). Creed, who accompanied Jones on walk-throughs, only voiced complaints about the work being performed in August of 1992. (Transcript, February 5, 1998, p. 131). Jones also testified under cross examination, however, that after installation and painting, a problem developed with some doors, specifically with the surface finish of the paint work, which was done negligently. (Transcript, February 5, 1998, pp. 135, 141). Jones informed CHFA about defective work on the project. (Transcript, February 5, 1998, p. 143).
The testimony of Jones indicates that Poitier negligently performed work on this part of the project. Assuming that this constituted a material breach of, and default under the contract between Poitier and the plaintiff,[1] CHFA could call the letter of credit under the Completion Assurance Agreement, which provides: "In the event of default by the contractor under the Construction Contract[2]: the entire Fund or balance remaining therein to the Lender; to be used by the Lender to indemnify and the Owner as the case may be, for any loss, damage or expense whatsoever which they may suffer by reason of the Contractor's failure to properly perform said Construction Contract." (Exhibit 31, Tab 20 § 2(c)). Thus, if Poitier is considered in default due to the negligent painting, CHFA may have breached the Completion Assurance Agreement by not calling the letter for credit. Nevertheless, the plaintiff has failed to prove a claim for breach of contract because it has not shown the fourth element of the cause of action: damages.
There is no evidence that the plaintiff suffered loss due to the defectively painted doors. Jones noted that there were problems with the doors in a report dated October 9, 1992. (Exhibit 16). The same problems were noted in a later report by Jones dated November 10, 1992. (Exhibit 17). The cost of remedying the default would be approximately $28,600. (Exhibit 6). There is further evidence, however, that the plaintiff was credited for work not completed or negligently completed by Poitier, including the finish on the doors. (Exhibit 110). Moreover, there is no evidence that overpayment on this item caused the loan to become unbalanced. Therefore, even if the negligently painted doors constituted a material breach by CT Page 7812 Poitier, the plaintiff has failed to prove any resulting damages. Accordingly, the plaintiff cannot recover under count two, alleging breach of contract under the Completion Assurance Agreement.
C. Count Three: Breach of Contract — Insurance Proceeds
The plaintiff seeks the disbursement of insurance proceeds based on an act of vandalism that occurred at the property on March 28, 1992. The original insurance check was for $150,000, which with interest has grown to between $180,000 and $190,000. The plaintiff argues that after the insurable loss was suffered, CHFA requested that the plaintiff undertake certain work, which was performed by the plaintiffs. The plaintiff also provided security for the building after Poitier walked off the job. CHFA argues that it has no obligation to turn over the insurance proceeds. Under the mortgage deed, CHFA argues, CHFA has the express right to retain such sums.
By letter dated January 21, 1993, CHFA contacted Creed regarding the disbursement of insurance proceeds. (Exhibit 15). The letter outlines how and for what purpose the proceeds were to be used. This included patyment of losses associated with the insurable incident, as well as completion of the original project. The letter also states that should the plaintiff decide to change its general contractor, it should notify CHFA in writing concerning why this change was being made. The plaintiff sought disbursement of these proceeds directly to itself rather than the use of said proceeds in conforming with the letter. Therefore, it would have been unreasonable for the plaintiff to presume that it was to receive the proceeds from the insurance check even if it did not comply with the conditions stated in the January 21, 1993 letter. The plaintiff has not submitted evidence indicating that the conditions outlined in the January 21, 1993 letter were met. Furthermore, the Mortgage Deed itself states that CHFA "may apply the net proceeds, at its option, as a credit on any portion of the Indebtedness, or to the [plaintiff] for the purpose of restoration of the Improvements in accordance with the procedures and otherwise under the terms and conditions of this Mortgage. . . ." (Exhibit 31, Tab 10, Article One § 1.04.4 (b)).
Because the plaintiff failed to comply with the requirements for receiving payment from the insurance proceeds, CT Page 7813 and the agreement specifies that CHFA could apply such proceeds to any outstanding indebtedness, the plaintiff has failed to prove that it had a right to the insurance proceeds. Accordingly, the court finds that the plaintiff may not recover under count three of the complaint.
 IV. DAMAGES
The plaintiff has failed to prove its alleged damages are the result of CHFA's negligent conduct. Many of the plaintiff's claimed damages stem from the fact that the project was never completed because Poitier walked off of the job. The evidence indicates, however, that rather than engage an alternate general contractor to finish the project, which CHFA appeared willing to do (see Exhibit 16), the plaintiff decided to file this suit.
The plaintiff has failed to convince the court that Poitier's alleged material breach of his obligations under the construction contract, pursuant to the Completion Assurance Agreement, can be laid at the feet of CHFA and/or damaged the plaintiff. The plaintiff was indemnified for the negligent work out of monies it owed to Poitier.
The plaintiff has no "right" to the insurance proceeds. The payment of insurance proceeds rested entirely in the discretion of the CHFA. In addition, CHFA never led the plaintiff to believe that the funds would be paid direct to the plaintiff. Rather, the funds were to be used to cover damages resulting from the vandalism or as a credit on the plaintiff's indebtedness.
Accordingly, judgment is entered in favor of the defendant.
David W. SKOLNICK, JUDGE