Charlene TICE

v.

**SOUTHINGTON BOARD OF EDUCATION, Robert Wood, Louis Saloom.**

No. 3:96CV1651 (JBA).

United States District Court, D. Connecticut.

May 5, 2000.

Jane Boucher Monahan, West Hartford, CT, Barbara E. Gardner, Manchester, CT, for Plaintiff.

Harold C. Donegan, Barry P. Beletsky, Richard P. Sperandeo, Ruth Beardsley, James A. Mongillo, Sperandeo & Donegan, New Haven, CT, Michael Peter McKeon, Thomas N. Sullivan, Mark J. Sommaruga, Sullivan, Schoen, Campane & Connon, Hartford, CT, Stephen P. Fogerty, Thomas P. O'Dea, Jr., Halloran & Sage, West Westport, CT, for Defendants.

### RULING ON DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW [DOC. # 95]

ARTERTON, District Judge.

After trial, in which a jury awarded the plaintiff $60,000 against defendant Southington Board of Education ("Board") on a claim of negligent infliction of emotional distress, the defendant moved for judgment as a matter of law pursuant to Fed. R.Civ.P. 50. The defendant argues that the Board is shielded from liability by the doctrine of governmental immunity.

## I. FACTUAL BACKGROUND

Since 1977, plaintiff Charlene Tice has been employed as a teacher by the defendant Southington Board of Education ("Board"). From 1986 until 1996, she was a third grade teacher at Plantsville School in Southington. In October 1994, a parent made an accusation that Tice had shaken one of her students, which Robert Wood, the principal of Plantsville School, and Louis Saloom, the Superintendent of Schools, investigated through interviews with students and parents. The plaintiff was asked to take a medical leave for one month, and placed on "intensive assistance" upon her return. Tice was thereafter the subject of a number of letters from parents complaining about her classroom practices, and requesting that their children not be placed in her class. After school officials had held numerous meetings with Tice and with parents attempting to resolve the situation, Tice was involuntarily transferred to teach fifth grade at another school in the same district. She brought suit against Saloom, Wood, and the Board of Education, alleging constitutional violations and common law claims. The jury found for the individual defendants on plaintiff's Equal Protection claim and for the Board on her invasion of privacy claim, but awarded plaintiff $60,000 on her claim against the Board for negligent infliction of emotional distress. This Rule 50 motion followed. Although the motion was withdrawn in the course of the party's settlement discussions, negotiations were unsuccessful and the Board subsequently renewed its post-trial motion.

## II. LEGAL STANDARDS

■ Pursuant to Rule 50(a), the court may grant a motion for judgment as a matter of law against a party in the event that "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all evidence, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed.R.Civ.P. 50(b). A district court may grant a motion for judgment as a matter of law only if

there exists "such complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or the evidence in favor of the movant is so overwhelming "that reasonable and fair minded [persons] could not arrive at a verdict against [it]."

*Luciano v. Olsten Corp.*, 110 F.3d 210, 214 (2d Cir.1997) (*quoting Cruz v. Local Union No. 3*, 34 F.3d 1148, 1154 (2d Cir. 1994)). "Judgment n.o.v. is proper 'only if the evidence viewed in the light most favorable to the non-movants, without considering credibility or weight, reasonably permits only a conclusion in the movant's favor.'" *Doctor's Assoc., Inc. v. Weible*, 92 F.3d 108, 112 (2d Cir.1996) (*quoting Baskin v. Hawley*, 807 F.2d 1120, 1129 (2d Cir.1986)). In order to grant a motion for judgment as a matter of law, the court must find "either an utter lack of evidence supporting the verdict," *Doctor's Assoc.*, 92 F.3d at 112, or the evidence must be "so overwhelming that reasonable and fair-minded persons could only have reached the opposite result," *Baskin*, 807 F.2d at 1129. Federal Rule of Civil Procedures 50(b) "generally proscribes judgment n.o.v. on any ground not specifically raised in an earlier motion for a directed verdict at the close of all the evidence," unless relief from the specificity requirement is necessary to avoid manifest injustice. *Doctor's Assoc.*, 92 F.3d at 112, 113. In ruling on a Rule 50 motion after trial, a court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. Fed.R.Civ.P. 50(b)(1).

## III. DISCUSSION

The defendant contends that it is shielded by governmental immunity from plaintiff's claim of negligent infliction of emotional distress. Plaintiff counters that the immunity defense is not timely raised, and

that in any event the Board of Education is not immune pursuant to Conn.Gen.Stat. § 52–557n. While resolution of the immunity question is complicated by uncertainties in the relevant law and the failure of the defendant to raise the issue at any point, aside from its answer, prior to its Rule 50 motion, as discussed below, the Court concludes that defendant is not entitled to judgment as a matter of law, and therefore the Board's motion is DENIED.

### A. Pleading requirements under Conn. Gen.Stat. § 52–557n

A municipality's potential liability for its tortious acts is limited by the common law principle of governmental immunity. *Ryszkiewicz v. New Britain,* 193 Conn. 589, 593, 479 A.2d 793 (1984). As compared to sovereign immunity, which originates from the early feudal concept that the king can do no wrong and has been woven into the fabric of this country's constitution and case law, municipal immunity is generally described as a court-made rule. *Giannitti v. City of Stamford,* 25 Conn.App. 67, 78, 593 A.2d 140 (1991) (discussing history of sovereign immunity and municipal immunity). While municipalities enjoy some limited governmental immunity from liability, they have no sovereign immunity and may therefore sue or be sued as any other natural person. *Ryszkiewicz,* 193 Conn. at 593, 479 A.2d 793.

The governmental immunity retained by municipalities may be abrogated by statute, and the legislature has acted to limit such immunity in certain circumstances. *See, e.g.* Conn.Gen.Stat. 13a–149 (providing for municipal liability for property damage or personal injury caused by defective roads and bridges). "The legislature has also set forth general principles of municipal liability and immunity in General States § 52–557n." *Williams v. New Haven,* 243 Conn. 763, 766, 707 A.2d 1251 (1998). That statute provides in relevant part:

> Liability of political subdivision and its employees, officers and agents. Liability of members of local boards and commissions. (a)(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties.... (2) Except as otherwise provided by law, a political subdivision or the state shall not be liable for damages to person or property caused by ... (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

Conn.Gen.Stat. § 52–557n.

In her brief in opposition to defendant's Rule 50 motion, plaintiff made clear that her claim of negligence against the Board is founded on § 52–557n. Defendant objects to this late enlistment of the statute, arguing based on *Williams* that plaintiff's claim is barred under the doctrine of municipal immunity unless the applicable statute appears in the original complaint. In *Williams,* the Connecticut Supreme Court examined the issue of whether the plaintiffs could maintain an action in negligence against the City of New Haven where the plaintiffs had not pled or cited to any statutory exception to municipal immunity. *Williams,* 243 Conn. at 770, 707 A.2d 1251. The Connecticut Supreme Court agreed with the defendant that it was immune from liability for common-law negligence, but only after making it very clear that this decision was based on the plaintiff's failure to "advance[ ] any statute as a basis for the liability of the defendant in this case." *Id.* at 766, 707 A.2d 1251. Justice Berdon, moreover, wrote a concurring opinion underscoring that "[t]he problem in this case is that the plaintiffs have neither argued before the trial court nor this court that § 52–557n has changed the law on immunity.... Accordingly, [this issue] must be left to another day." *Id.* at 771–72, 707 A.2d 1251.

After *Williams,* a split has developed among the Superior Courts on the issue of

whether to permit a plaintiff to proceed with a cause of action based upon municipal negligence, even when the pleadings fail to name a statute. *See LaChance v. City of Waterbury*, 2000 WL 278951, Docket No. CV 980148936 (Conn.Super. Feb. 29, 2000) (citing cases, but adopting view that plaintiffs should be permitted to proceed with their cause of action). As the trial court explained in *Baranowsky v. City of Waterbury*, No. CV 96133416, 1998 WL 828079 (Conn.Super.1998), in which the plaintiff raised § 52–557n for the first time in opposition to a summary judgment motion, "nowhere in *Williams* is she required to [cite the statute in her complaint] ... A requirement that [plaintiff] plead the statute as the basis of the city's liability would be too restrictive since § 52–557n 'merely codified existing case law against municipalities.' " (citations omitted).

■ While plaintiff was concededly tardy in identifying her legal theory and the statutory grounds for abrogation of immunity in these circumstances, the Court is of the opinion that *LaChance* and *Baranowsky* present the better view. The Connecticut Appellate Court has recognized that express reference to a statute within a pleading is directory, rather than mandatory. *See Peerless Ins. Co. v. Tucciarone*, 48 Conn.App. 160, 163 n. 3, 708 A.2d 611 (1998). Plaintiff here, as compared to the plaintiff in *Williams*, did cite a specific statutory provision abrogating the Board's governmental immunity, albeit post-trial.

Further, defendant will not be unduly prejudiced by allowing plaintiff to invoke § 52–557n at this late date. "The purpose of requiring affirmative pleading is to apprise the court and the opposing party of the issues to be tried and to prevent concealment of the issues until the trial is underway." *Westport Taxi Service v. Westport Transit District*, 235 Conn. 1, 24, 664 A.2d 719 (1995). Defendant here should not be surprised at plaintiff's invocation of § 52–557n. The number of statutes under which plaintiff could bring her claim are necessarily limited. If plaintiff brought her claim against individual officials and then sought indemnification from the Board, her claim would have proceeded under either Conn.Gen.Stat. § 7–465 or § 10–235. In addition, § 7–465 requires that claimants notify the town in writing of their intent to commence suit within six months of the injury, and there is considerable dispute among the superior courts as to whether § 10–235 even permits a suit directly against a local board of education. *See Ambrose v. Singe*, 1997 WL 338561 (June 10, 1997) (noting that "a majority of [trial court] decisions regarding General Statutes 10–235 hold that an injured plaintiff has no direct cause of action against a board of education for indemnification...").

Plaintiff's complaint clearly indicates that her negligent infliction claim was brought only against the Board. *See* Amended Complaint dated June 16, 1998 (Doc. # 56). Therefore plaintiff's complaint had to have been brought under § 52–557n, or her negligent infliction claim would suffer from serious legal deficiencies. Nonetheless, the defendant never tested the issue by way of a motion to dismiss or for summary judgment. While defendant was not required to do so, it should not now be heard to complain that plaintiff's failure to identify a particular statute somehow misled it with regard to its trial strategy. The Court rejects defendant's argument that *Williams* requires an entry of judgment in its favor, and denies defendant's Rule 50 motion on those grounds.

### B. Applicability of § 52–557n

■ In the alternative, the defendant argues that § 52–557n does not save the plaintiff's verdict because that statute only authorizes claims in negligence where the municipality has breached a ministerial, but not a discretionary, duty. "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature.... On the other hand, ministerial acts are performed in a prescribed manner without the

exercise of judgment or discretion as to the propriety of the action." *Heigl v. Board of Education,* 218 Conn. 1, 5, 587 A.2d 423 (1991) (citations omitted). Defendant argues that the discipline of a public school teacher is not ministerial in nature, and that thus the abrogation of municipal immunity in § 52–557n does not apply.

Although it pled governmental immunity as an affirmative defense, defendant did not request a charge on the difference between ministerial and discretionary acts, nor did it introduce evidence from which the distinction could be determined. Instead, defendant asserts that the applicability of governmental immunity is a question of law that can be decided post-trial. While defendant may be correct that "it is clear that the supervision and discipline of public school teachers is a discretionary function and not ministerial," Def. Reply Mem. at 4, this contention misses the crux of plaintiff's argument. As demonstrated by the evidence presented at trial, plaintiff challenged not only the ultimate decision to transfer her, but the lapses in the procedure by which the decision was effectuated. Plaintiff's Exhibit 93 is a Southington Public Schools policy manual which outlines the Board's obligations in responding to complaints. The manual provides in relevant part:

> Complaints made to Board members about school personnel *shall* be referred to the superintendent for study and possible resolution. The individual employee *shall* be advised of the complaint and be given the opportunity to explain or comment of the allegations in question.

(Pl.'s Ex. 93) (emphasis added). The union contract, in providing for the procedures that are to be followed in involuntarily transferring teachers, states that involuntary transfer will be made only on the recommendation of two supervisors to the Superintendent or designee, and that prior to the transfer the Superintendent will meet with the teacher and a union representative, at which time the teacher will be notified of the reason for transfer. (Pl. Ex.67). Further, a member of the Board testified that he would think that the superintendent "definitely" would go to the teacher to get his or her version of the facts in the case of parental complaints, pursuant to the policy expressed in plaintiff's Exhibit 93. Testimony of Nicholas DePaola. It is the failure to follow this policy that plaintiff claims engendered her emotional distress, not merely the fact of the transfer. As such, the conclusion that the supervision and discipline of a public school teacher are discretionary acts is not fully dispositive of the viability of Ms. Tice's claim.

The Court must therefore determine whether the question of governmental immunity can be decided in this case as a matter of law, without the benefit of additional evidence or jury determination of disputed factual issues on the nature of the duty implicated by the Board policy and contract. Connecticut courts in the past have determined whether particular governmental functions were ministerial or discretionary as a matter of law, such as in cases involving the operation of police departments. In *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 166, 544 A.2d 1185 (1988), the Connecticut Supreme Court affirmed the trial court's ruling granting the city's motion to strike on immunity grounds. Plaintiff's decedent had been lured into a housing project and badly beaten, and plaintiff brought suit against the local police department, among others, arguing that the police had failed to deploy sufficient patrol units in the area, and that such a failure was breach of a duty imposed by law, not a discretionary decision. The court rejected this argument, noting that "[t]he plaintiff's claims run counter to the great weight of authority that the operation of a police department is a discretionary governmental function." 208 Conn. at 179, 544 A.2d 1185. Trial courts have since concluded that the acts or omissions of police officers in the exercise of their duties are discretionary functions and thus protected from common law liability by governmental immunity. *See Daley v. McClintock,* No. CV 95050415, 1999 WL 1013236 (Conn.Super.

Oct. 28, 1999) (citing cases); *Gregory v. City of Bridgeport,* No. CV 97341425S, 1999 WL 311243 (Conn.Super. May 6, 1999.); *Coletosh v. City of Hartford,* No. CV 970573462S, 1999 WL 259656 (Conn.Super. April 13, 1999) (citing cases).

Contrary to defendant's characterization of plaintiff's claim, however, the duty claimed here is not analogous to the duty to provide police protection in *Gordon* and related cases. Plaintiff's claim does not seek to impose on all municipal employers a broad duty to refrain from inflicting emotional distress; rather, she challenges the defendant's failure to follow its own policies in failing to notify her of the complaints against her and provide her with an opportunity to be heard in her own defense. Defendant has not cited, and the Court has been unable to find, any cases ruling that actions pursuant to such a policy phrased in mandatory terms are discretionary as a matter of law. While defendant's argument has some logical appeal, in that the concept of discipline implies a judgment regarding the appropriate course of conduct to take in response to alleged misconduct, the evidence about the policy in this case showed the Board's response to complaints about teachers, including the particular misconduct alleged here, was necessarily circumscribed by the procedures outlined in its policy manual, and that these procedures were not followed in Ms. Tice's case.

Further, the mandatory language of the policy and the nature of Ms. Tice's claim persuade the Court that the applicability of governmental immunity to this case required factual determination by the jury as to the Board's operative interpretation and application of its policy to determine the extent, if any, of judgment exercised. As noted above in the discussion of *Gordon,* some Connecticut courts have decided the immunity issue as a matter of law, on a motion to strike or at summary judgment. *See Heigl,* 218 Conn. at 5, 587 A.2d 423 (where Board was acting pursuant to its statutory authority to promulgate policies, with no indication that decedent had been singled out, Board was acting for public

benefit and thus was protected by immunity); *Stracener v. South Central Connecticut Regional Water Authority,* 2000 WL 350444 (Conn.Super. March 21, 2000) (operation of public works department is analogous to operation of police department, and thus under *Gordon* duty to respond to broken water main was public duty and immunity protected municipal entity's actions). However, there is uncertainty in Connecticut case law regarding whether under some circumstances the discretionary/ministerial question is factual in nature. For instance, in *Kolaniak v. Board of Educ.,* 28 Conn.App. 277, 610 A.2d 193 (1992), the Appellate Court affirmed the trial court's charge that informed the jury that governmental immunity was not applicable as a matter of law, as the act of clearing walkways of ice and snow was ministerial in nature. The court conceded, however, "that there is also authority that supports the plaintiff's claim that whether an act is discretionary or ministerial is a question of fact for the jury." 28 Conn. App. at 280, n. 4, 610 A.2d 193, *citing Gauvin v. New Haven,* 187 Conn. 180, 186, 445 A.2d 1 (1982) ("Whether the act complained of ... is governmental or ministerial is a factual question which depends upon the nature of the act complained of....").

The uncertainty at the appellate level notwithstanding, this Court is persuaded that the Connecticut Supreme Court delineated the proper responsibility for judge and jury in *Gordon.* While acknowledging that some cases hold that the distinction between ministerial and discretionary acts is a factual question, including *Gauvin* and *Tango v. New Haven,* 173 Conn. 203, 377 A.2d 284 (1977), this seeming contradiction with determination of discretionary governmental function as a matter of law was explained thus:

> The crucial distinguishing factor is that the duty of the municipality is unquestioned under the facts pleaded in those cases. In contrast, the city of Bridgeport and its employees had no duty,

whether characterized as public or private, to provide police protection to plaintiff's incapable under the facts alleged in the complaint. Had such a duty existed, then the plaintiff would have had an opportunity to demonstrate that the defendants' actions in carrying out that duty were either ministerial or fell under an exception for discretionary acts.

*Gordon,* 208 Conn. at 181, 544 A.2d 1185. Therefore, because the police department had only a duty towards the public at large to provide protection, and not a private duty to individuals, the court resolved the immunity question as a matter of law. *See id.,* 208 Conn. 161 ("It is important to distinguish between the existence of a duty and a breach of that duty.... The existence of a duty is a question of law.")

In contrast, the instant case does not involve such an abstract "duty in the air" as was deemed governmental in nature in *Gordon.* Plaintiff's claim did not rest on a claim of duty, but instead on the breach of an acknowledged obligation. Ms. Tice does not seek to predicate a private duty on the performance of a public function, *see Heigl,* 218 Conn. at 8, 587 A.2d 423 (duty to supervise high school students is public duty, not one which imposes a private duty to an individual student), nor does she challenge the breach of a duty owed to her as a member of the general public. *See Brown v. Town of Branford,* 12 Conn.App. 106, 111, 529 A.2d 743 (1987). Rather, the duty that Ms. Tice claimed was the Board's obligation to notify her regarding parental complaints, to provide an opportunity for her to explain and comment, and to follow certain procedures prior to involuntarily transfer, pursuant to the policies adopted by the Board itself. It is the breach of these obligations that plaintiff claims as the tortious conduct, obligations that the Board indisputably has assumed pursuant to its policy.

"A duty of care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." *O & G Industries, Inc. v. New Milford,* 29 Conn.App. 783, 790, 617 A.2d 938 (1992), *quoting Coburn v. Lenox Homes, Inc.,* 186 Conn. 370, 375, 441 A.2d 620 (1982). The Board's duty in this case is not the sort that a municipal entity owes to all residents or citizens; it is founded on the Board's own policies towards its employees, and the foreseeability of harm from unfounded misguided complaints impacting a teacher's employment and the employment relationship itself.

The existence of a duty to follow the policies it promulgated in this situation has never been challenged by the Board. While in one of its numerous "Supplemental Briefs" in support of its Rule 50 motion, defendant contends that a claim for negligent infliction of emotional distress cannot lie in the absence of a termination, as found by the Superior Court in *Taylor v. Southern New England Telephone·Co.,* No. CV 9703988, 1998 WL 928432 (Conn.Super. Dec. 24, 1998) (interpreting *Parsons v. United Technologies Corp.,* 243 Conn. 66, 700 A.2d 655 (1997)), this argument was raised for the first time six months after the jury verdict was rendered, and was never addressed in defendant's Rule 50(a) motion. It thus is considered forfeited. *See Holmes v. United States,* 85 F.3d 956, 961 (2d Cir.1996). Even if not forfeited, the Court does not view *Parsons* as conclusively foreclosing this cause of action in all non-termination circumstances. The Court notes the Second Circuit's recent observation that the Connecticut Supreme Court might permit a claim for negligent infliction of emotional distress in the absence of a termination, in light of the 1993 amendments to the Workers' Compensation Act that excluded coverage for mental and emotional impairment. *See Malik v. Carrier Corp.,* 202 F.3d 97, 103 n. 1 (2d Cir.2000) (After discussing effects of 1993 amendments and reviewing Connecticut law on the tort of negligent infliction, observing "[f]inally, we note that the Connecticut Supreme Court

has arguably acknowledged the possibility that such a claim might arise in the employment context.... Whether a viable emotional distress claim for negligent acts in the employment context exists under Connecticut law is thus unclear.")

Where plaintiff's evidence of deviations from these requirements formed part of her claim of negligent infliction of emotional distress, it cannot be concluded as a matter of law that the Board's handling of the complaints against Ms. Tice was such as to be entitled to governmental immunity. This is not to say that there could not have existed evidence from which a reasonable jury could have found that despite the language of the above policies, actual practice of the Board's implementation of its policy required the exercise of judgment and discretion in responding to parental complaints. Conversely, there could be evidence of defendant's implementation practice that would have permitted a jury to reach the opposite conclusion—that the Board routinely followed its policy requirements. Since defendant did not request a charge on its affirmative defense of governmental immunity and did not present evidence on which a jury would necessarily have had to find in its favor, judgment as a matter of law is inappropriate. *See, e.g., Couture v. Board of Educ.,* 6 Conn.App. 309, 311, 505 A.2d 432 (1986) (while trial court improperly decided governmental immunity as a matter of law while granting directed verdict, court did not err in directing verdict on that ground where jury could only have reached conclusion that defendants were performing governmental acts).

The nature of the duty here, then, is quite distinct from that at issue in *Gordon, Couture,* and other cases deciding the applicability of governmental immunity as a matter of law, and this case fits more appropriately in that category of cases where "the duty of the municipality is unquestioned under the facts pleaded in those cases." *Gordon,* 208 Conn. at 180–81, 544 A.2d 1185. As the defendant assumed a private duty to the plaintiff in this case by its protective policies, the relevant question for government immunity purposes is whether the exception to the abrogation of immunity contained in § 52–557n(2)(B) for discretionary acts applied to the facts of this case. Such a determination as to whether defendant met its burden of proof in this regard should have been made by the jury. *Gauvin,* 187 Conn. at 186, 445 A.2d 1; *Imfeld v. West Hartford,* 1999 WL 1288939 (Conn.Super. Dec. 15, 1999) (concluding that whether the town's acts in the operation of a public ice skating rink constitute governmental or ministerial functions is a genuine issue of material fact for the trier of fact, citing cases).

## C. Burden of proving affirmative defense

Defendant did not pursue a summary judgment motion, or otherwise position the immunity issue for pretrial or trial determination. While defendant's counsel explained at oral argument that his client chose not to test the issue in pretrial proceedings out of a preference for avoiding piecemeal litigation, such a strategic choice risks forfeiture of those questions which could have been determined on summary judgment in the absence of genuinely disputed material facts, or which should have been submitted to the jury for factual determination. *See Hamilton v. Atlas Turner,* 197 F.3d 58, 62 (2d Cir. 1999) (finding under totality of the circumstances that defendant had forfeited personal jurisdiction defense where it participated in pretrial proceedings, but never moved to dismiss for lack of personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer); *Blissett v. Coughlin,* 66 F.3d 531 (2d Cir.1995) (finding that defendant waived qualified immunity defense where defendant pled only general immunity as affirmative defense, did not raise the issue during pre-trial proceedings, did not seek summary judgment on the issue, made no mention of it in their pre-trial memorandum and did not offer a proposed charge).

■ While neither the Connecticut Supreme Court nor the Appellate Court has expressly spoken on the burden of proving an immunity defense, the Court concludes that the defendant Board had the burden of establishing its own affirmative defense of immunity. The Connecticut Supreme Court has noted that governmental immunity "is a defense like those that require pleading as a special defense under Practice Book § 164 [now 10–50].... Governmental immunity is essentially a defense of confession and avoidance similar to other defenses required to be affirmatively pleaded." *Gauvin,* 187 Conn. at 184, 445 A.2d 1. A party who so pleads a special defense "presumably does so with the idea of making his defense appear to be stronger and more aggressive, and invites the court to charge that he has assumed the affirmative upon that particular issue...." *Atlantic Richfield Co. v. Canaan Oil Co.,* 202 Conn. 234, 520 A.2d 1008 (1987). A number of superior courts have taken these principles and concluded that a defendant asserting the defense of governmental immunity bears the burden of proving its applicability. *See Santiago v. New Britain,* 42 Conn.Supp. 22, 598 A.2d 373 (1991) (requirement that governmental immunity be affirmatively pleaded places burden of proof on defendant); *Herasimovich v. Nat'l Railroad Passenger Corp.,* 1992 WL 316377 (Conn.Super. Oct. 21, 1992) (because material facts remain as to whether acts were governmental or ministerial in nature, defendant "has not met its burden of proving that governmental immunity bars plaintiff's claim."); *Roman v. Handy,* 1993 WL 280298 (Conn.Super. July 15, 1993) (As parties do not dispute that defendant had a duty, but instead dispute whether the duty owed was governmental or ministerial, factual question is presented, and "[t]herefore, defendants have not met their burden of establishing that the acts complained of are governmental or discretionary.")

Assigning the burden of proving governmental immunity to the defendant here squares with the approach taken in other jurisdictions, placing the burden of proving a municipal immunity defense on the governmental entity asserting it. *See Trujillo v. Utah Dep't of Transportation, et al.,* 986 P.2d 752, 759 (Utah App.1999) ("Immunity is an affirmative defense which the defendant bears the burden of proving."); *Rehn v. Fischley,* 557 N.W.2d 328, 333 (Minn. 1997) (Party asserting immunity bears the burden of demonstrating facts entitling it to immunity.); *Danforth v. Gottardi,* 667 A.2d 847 (Me.1995) (Governmental entity against whom a claim is made has burden of proving that it has not waived its immunity by procuring insurance). Allocating the burden in such a way preserves a municipality's immunity in the appropriate instance, while recognizing "the current of criticism ... that it is better that the losses due to the tortious conduct of officers and employees should fall upon the municipality rather than upon the injured person and that the torts of public employees are properly to be regarded, as in other cases of vicarious liability, as a cost of the administration of government and should be borne by the public." 4 Restatement (Second), § 895C, *cited in Williams,* 243 Conn. at 771, 707 A.2d 1251 (Berdon, J., concurring).

The Court has rejected defendant's argument that immunity applies here as a matter of law, in light of the specific nature of plaintiff's claim of negligence and her evidence supporting it, including evidence of a mandatory-sounding policy whose ministerial nature was corroborated by the testimony of a Board member. The Court accordingly concludes that the jury was the appropriate body to determine whether governmental immunity applied to the facts of this case. By failing to present evidence probative of this distinction, and by failing to request a charge that would instruct the jury on the standards for making the necessary determination, the defendant has failed to carry its burden of proof on its affirmative defense of governmental immunity.

## IV. CONCLUSION

For the reasons outlined above, Defendant's Renewed Motion for Judgment as a Matter of Law [doc. # 95] is DENIED.

IT IS SO ORDERED.