## IRMA WILLIAMS ET AL. *v.* CITY OF NEW HAVEN
### (SC 15700)

Callahan, C. J., and Borden, Berdon, Katz and Palmer, Js.

Argued December 11, 1997—officially released March 3, 1998

*Thomas W. Ude, Jr.*, assistant corporation counsel, for the appellant (defendant).

*Jerald S. Barber*, with whom was *Earl I. Williams*, for the appellees (plaintiffs).

BORDEN, J. The dispositive issue in this appeal is whether the plaintiffs may maintain a negligence action against the defendant, the city of New Haven, in the absence of a statute expressly providing for such municipal liability. The named plaintiff, Irma Williams, brought this action, as parent and next friend of her minor son, James L. Williams, and on her own behalf for his medical expenses, against the defendant for injuries that James sustained when he was struck by a high velocity stream of water from a fire hydrant that had been opened by an unauthorized person. The defendant appeals from the judgment of the trial court rendered in accordance with the jury's verdict for the plaintiffs, following the court's denial of the defendant's motion to set the verdict aside.[1] The defendant claims that governmental immunity barred the plaintiffs' negligence action against it because they did not rely on any statute granting an exception to the governmental immunity provided by the common law to a municipality. We agree with the defendant and, accordingly, we reverse the judgment of the trial court.

The material facts and procedural history are undisputed. On July 6, 1991, Irma Williams called the fire department on two separate occasions to report that the fire hydrant near her home, which was located on Orchard Street in New Haven, had been opened, and to request that the water be shut off. During the second call, she also requested that a locking device be placed on the hydrant to prevent unauthorized openings from occurring. On July 8, 1991, James Williams was crossing Orchard Street when a stream of water from the open fire hydrant caused him to fall and hit his face on the

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

pavement. As of that date, the defendant had not placed a locking or antivandalism device on the hydrant.

The plaintiffs did not name any agent, employee or officer of the municipality as a defendant, and brought this action against only the city of New Haven. The three count complaint alleged: (1) negligence on the part of the defendant for having allowed unauthorized persons to open the hydrant and for not having installed a locking device on it; (2) nuisance; and (3) reimbursement to Irma Williams for her son's medical expenses. The defendant filed three special defenses asserting: (1) governmental immunity in the absence of a claimed statutory exception; (2) municipal exemption from liability for nuisance, unless the nuisance was created by a positive act of the municipality; and (3) contributory negligence by James Williams. The plaintiffs subsequently withdrew the count alleging nuisance on the part of the defendant. Thus, the case was presented to the jury solely on the theory of common-law negligence of the defendant.

The jury returned a verdict for the plaintiffs awarding $7000 in economic damages to Irma Williams, and $8000 in noneconomic damages to James Williams, which amount was reduced by 30 percent for his comparative negligence to $5600. The trial court rendered judgment for the plaintiffs in accordance with the jury verdict and denied the defendant's motion to set aside the verdict. This appeal followed.

The defendant claims that it has governmental immunity from liability for common-law negligence and that the plaintiffs cannot prevail as a matter of law because they did not rely on any statute to abrogate that immunity. We agree.[2]

---

[2] Our conclusion renders it unnecessary to consider the defendant's other claims, namely, that the trial court improperly: (1) refused to direct a verdict for the defendant in the absence of expert testimony; (2) instructed the jury

We first note that, throughout the entire course of this litigation, including the allegations of the complaint, the trial and this appeal, the plaintiffs have relied solely on their claim of common-law negligence on the part of the defendant. At no time have they advanced any statute as a basis for the liability of the defendant in this case. Accordingly, on appeal, we consider this case as it was litigated in the trial court and briefed and argued in this court. *Fink* v. *Golenbock*, 238 Conn. 183, 193, 680 A.2d 1243 (1996).

"[I]t is the settled law of this state that a municipal corporation is not liable for negligence in the performance of a governmental function." (Internal quotation marks omitted.) *Wysocki* v. *Derby*, 140 Conn. 173, 175, 98 A.2d 659 (1953); *Lambert* v. *New Haven*, 129 Conn. 647, 649, 30 A.2d 923 (1943); *Hannon* v. *Waterbury*, 106 Conn. 13, 16, 136 A. 876 (1927). This court has previously stated that "[a] municipality itself was generally immune from liability for its tortious acts at common law; *Ryszkiewicz* v. *New Britain*, 193 Conn. 589, 593, 479 A.2d 793 (1984) . . . ." *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 165, 544 A.2d 1185 (1988). We have also long recognized that, "[u]nder our rule, the principle of governmental immunity extends to the construction and maintenance of fire equipment as well as to its use for fire protection." *Brock-Hall Dairy Co.* v. *New Haven*, 122 Conn. 321, 324, 189 A. 182 (1937); 18 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1993) § 53.52. We have also recognized, however, that governmental immunity may be abrogated by statute. *Wysocki* v. *Derby*, supra, 175 ("[l]iability for the negligent performance of a purely public governmental duty may occur only when a statute so provides"); *Epstein* v. *New Haven*, 104 Conn. 283, 284, 132 A. 467 (1926) (same). Thus, the general rule developed in our case

as to the applicable standard of care due to the presence of children; and (3) instructed the jury regarding the "public duty" doctrine.

law is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity.

The legislature has acted to limit governmental immunity in certain circumstances. For example, in General Statutes § 13a-149,[3] the legislature has provided for municipal liability for property damage or personal injuries caused by defective roads and bridges. The legislature also has set forth general principles of municipal liability and immunity in General Statutes § 52-557n.[4] The plaintiffs have not relied on either of

[3] General Statutes § 13a-149 provides in relevant part: "Damages for injuries by means of defective roads and bridges. Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. . . . No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation. . . ."

[4] General Statutes § 52-557n provides in relevant part: "Liability of political subdivision and its employees, officers and agents. Liability of members of local boards and commissions. (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

"(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for

these two statutes, nor have they cited to any other statute as a means of abrogating the defendant's governmental immunity.

In addition, the legislature has provided for indemnification by municipalities of municipal officers, agents or employees who incur liability for certain of their official conduct. See General Statutes §§ 7-465 and 7-308.[5] The plaintiffs, however, have not sought to avail

damages to person or property resulting from: (1) The condition of natural land or unimproved property; (2) the condition of a reservoir, dam, canal, conduit, drain or similar structure when used by a person in a manner which is not reasonably foreseeable; (3) the temporary condition of a road or bridge which results from weather, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (4) the condition of an unpaved road, trail or footpath, the purpose of which is to provide access to a recreational or scenic area, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568; (6) the act or omission of someone other than an employee, officer or agent of the political subdivision; (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances; (9) failure to detect or prevent pollution of the environment, including groundwater, watercourses and wells, by individuals or entities other than the political subdivision; or (10) conditions on land sold or transferred to the political subdivision by the state when such conditions existed at the time the land was sold or transferred to the political subdivision. . . ."

[5] General Statutes § 7-465 provides in relevant part: "Assumption of liability for damage caused by employees or members of local emergency planning districts. Joint liability of municipalities in district department of health or regional planning agency. (a) Any town, city or borough, notwithstanding

themselves of these statutory remedies by bringing an action against any individuals and then claiming municipal indemnification.

Because it is clear that a municipality enjoys governmental immunity for common-law negligence unless a statute has limited or abrogated that immunity, the plaintiffs cannot prevail. The plaintiffs do not rely on any such statute, and they have failed to name an agent, officer or employee of the municipality and to invoke indemnification pursuant to § 7-465. The doctrine of governmental immunity, therefore, is fatal to their cause of action against the defendant.

At oral argument before this court, the plaintiffs claimed that governmental immunity is not applicable under the circumstances of the present case because the defendant is a corporation and can be held liable for negligence just as any other person or entity could be held liable. We are not persuaded. The plaintiffs cite no authority for this broad proposition, which would

any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . ."

General Statutes § 7-308 provides in relevant part: "Assumption of liability for damages caused by firemen. . . . Each municipality of this state, notwithstanding any inconsistent provisions of law, general, special or local, or any limitation contained in the provisions of any charter, shall pay on behalf of any paid or volunteer fireman of such municipality all sums which such fireman becomes obligated to pay by reason of liability imposed upon such fireman by law for damages to person or property, if the fireman, at the time of the occurrence, accident, injury or damages complained of, was performing fire duties and if such occurrence, accident, injury or damage was not the result of any wilful or wanton act of such fireman in the discharge of such duties. . . ."

be inconsistent with the well established doctrine of governmental immunity and the statutory exceptions thereto.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the defendant.

In this opinion CALLAHAN, C. J., and KATZ and PALMER, Js., concurred.

BERDON, J., concurring. The majority is correct that based upon cases such as *Wysocki* v. *Derby*, 140 Conn. 173, 175, 98 A.2d 659 (1953), a municipal corporation is immune from liability when it performs a governmental function. The jurisprudential underpinnings of this immunity, however, is as antiquated as the roots of the doctrine. It had its beginning with the 1788 case of *Russell* v. *Men of Devon*, 100 Eng. Rep. 359 (1788). *Russell* was decided "at a time when the idea of the governmental corporate entity was still in a nebulous state, so that the action was brought in effect against the entire population of a county. In addition to lack of precedent and fear of a multiplicity of actions, the decision was based on the fact that there were no corporate funds out of which satisfaction of a judgment could be obtained, so that individual citizens would be required to pay." 4 Restatement (Second), Torts § 895C, comment (c) (1979).

The landscape of municipal liability, corporate and employee, has obviously changed with the adoption of General Statutes § 52-557n, which codified § 13 of the Tort Reform Act of 1986, Public Acts 1986, No. 86-338. Section 52-557n provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . [t]he negligent acts or omissions of such political subdivision or any employee, officer or

agent thereof acting within the scope of his employment or official duties . . . ."[1]

Although the legislative history of § 52-557n is murky; see *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 188, 592 A.2d 912 (1991); whether the light will eventually shine on the law with respect to municipal and municipal employee liability in Connecticut remains to be seen. In his treatise, Professor Keeton points out that most states have abolished municipal immunity. W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 131, p. 1052. Indeed, "the American Law Institute now recognizes the rule to be that municipalities have no general immunity at all." Id., citing 4 Restatement (Second), supra, § 895C.[2] In adopting § 895C, the American Law Institute recognized "[t]he current of criticism . . . that it is better that the losses due to the tortious conduct of officers and employees should fall upon the municipality rather than upon the injured person and that the torts of public employees are properly to be regarded, as in other cases of vicarious liability, as a cost of the administration of government and should be borne by the public." 4 Restatement (Second), supra, § 895C, comment (d).

The problem in this case is that the plaintiffs have neither argued before the trial court nor this court that

[1] In *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 192, 592 A.2d 912 (1991), this court held that the savings clause language "[e]xcept as otherwise provided by law" refers to state and federal statutes.

[2] Section 895C of the Restatement (Second) of Torts provides: "(1) Except as stated in Subsection (2), a local government entity is not immune from tort liability.

"(2) A local government entity is immune from tort liability for acts and omissions constituting

"(a) the exercise of a legislative or judicial function, and

"(b) the exercise of an administrative function involving the determination of fundamental governmental policy.

"(3) Repudiation of general tort immunity does not establish liability for an act or omission that is otherwise privileged or is not tortious."

§ 52-557n has changed the law on immunity and/or that we should adopt § 895C of the Restatement (Second) of Torts. Accordingly, these issues must be left to another day.

I concur in the result.