[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The defendants, the City of Norwalk and Norwalk police officers William Lowe, John Lysobey, Dana McIndoe, Carl LaBianca, and Edward Schwartz have moved for summary judgment on the claims CT Page 14152 of the plaintiffs in the three cases captioned above. The plaintiffs in these cases seek compensation for damages alleged to have been suffered by Shamon Clark, Michael Towns, and Corey Jones.
The plaintiffs claim that on February 12, 1992, officers employed by the Norwalk police department stopped without probable cause a car driven by Michael Towns, pursued it along Interstate Route 95 at high speeds for several miles until it came to a stop after hitting a tree on a traffic island off an exit ramp, and shot into the car when it backed up, wounding Towns. Allegedly, the car, which also contained as passengers two minors, Shamon Clark, who was wounded in the shoulder, and Corey Jones, then crashed into a creek after fleeing from the police gunfire. It is alleged that a State Trooper pulled Clark from the water but that Towns and Jones drowned.
The plaintiffs allege, variously, deprivation of civil rights in violation of 42 U.S.C. § 1983 (violations of the Fourth Amendment prohibition against unreasonable seizure and the Fourteenth Amendment right to substantive due process), negligence, wrongful death, intentional infliction of emotional distress, assault and battery.
The defendants seek summary judgment arguing that the facts do not give rise to liability for violations of civil rights and that the remaining claims are barred by the doctrine of municipal immunity for the performance of governmental functions of a discretionary nature.
The defendants' motion for summary judgment is accompanied by a number of documents: excerpts from the depositions of Shamon Clark and defendants Lowe and Lysobey, interrogatory responses filed on behalf of the plaintiffs, unsworn reports by various police officers, and correspondence from a medical examiner and a state's attorney.
Standard for summary judgment
Summary judgment is to be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. It is well settled that a party seeking summary judgment has the burden of showing what the undisputed facts are and that the facts entitle the movant to judgment as a matter of law. Doty v. Mucci, CT Page 14153238 Conn. 800, 805-06 (1996); Miller v. United TechnologiesCorp. , 233 Conn. 732, 751-52 (1995); Suarez v. Dickmont PlasticsCorp. , 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v.Donnelly, 180 Conn. 430, 434 (1980). The Connecticut Supreme Court has observed that the issue is whether the movant would be entitled to a directed verdict on the same facts. Connell v.Colwell, 214 Conn. 242, 246-47 (1990).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Doty v. Mucci, supra, 238 Conn. 805.
Adequacy of documentary submissions
The plaintiffs have opposed the motion on the ground, among others, that the documents submitted are insufficient to support summary judgment pursuant to the requirements of Practice Book §§ 17-45 and 46.
Practice Book § 17-45 provides in pertinent part:
 A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like.
Practice Book § 17-46 provides:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto.
The movants have included in their brief over fifty pages of narrative claiming to state the facts, but they have not supported this long narrative with materials authorized by the applicable sections of the rules of practice. They have submitted no affidavits whatsoever.
The various reports appended to the defendants' motion are clearly hearsay in nature. Section 17-46 permits use of reports but makes it clear that affidavits must be provided to CT Page 14154 authenticate them. The reports appended to the movants' brief are not accompanied by any affidavit that identifies or authenticates them. While § 17-46 permits the use for purposes of a motion for summary judgment of documents authenticated in an accompanying affidavit or "sworn or certified copies" of documents referred to in an affidavit, it does not authorize reliance on documents as to which there is no foundation or authentication provided by an affidavit. The movants apparently have assumed that counsel, in a brief, may tell the court what the documents are. Such a procedure is not authorized by the rules of practice. The reports and letters submitted are not sworn or certified, nor are they identified in any sworn affidavit. Therefore, in deciding the merits of the defendants' motions, the court may not rely upon the reports.
The remaining procedural issue, then, is whether the excerpts of the deposition testimony of plaintiff Clark and defendants Lowe and Lysobey, the only materials that conform with the requirements of Practice Book § 17-45 and are sufficient to show, pursuant to Practice Book § 17-49, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
The plaintiffs take the position that the excerpts from the certified transcripts of depositions may not support summary judgment because such depositions would not be admissible if presented by the defendants at trial. While some trial judges have ruled that certified excerpts from depositions are not sufficient to support or oppose a motion for summary judgment, see Balderston v. Shoals Construction, Inc.,9 CONN. L. RPTR. 343, 343-44 (1993); Oberdick v.Allendale Mutual Insurance, Co., 1993 Ct. Sup. 7712
(J.D. of New Haven, Aug. 25, 1993), the text of Practice Book § 17-45 does not appear to support their conclusion, since it clearly authorizes the use of "certified transcripts of testimony under oath," without requiring that such transcripts be testimony taken for a particular purpose.
In Schratwieser v. Hartford Casualty Insurance Co.,44 Conn. App. 754, cert. denied, 241 Conn. 915 (1997), in determining whether an issue of material fact existed, the Appellate Court relied, without comment on the nature of the submissions, on excerpts from deposition testimony submitted by litigants on a motion for summary judgment. Similarly, in Haesche v. Kissner,229 Conn. 213, 219-221 (1994), both parties to a motion for summary judgment relied on deposition transcripts, and the CT Page 14155 Supreme Court reviewed the transcripts not only to determine whether an issue of fact existed, but also to determine that the trial court had correctly concluded that the defendant was entitled to judgment as a matter of law.
It is difficult to see why an affidavit prepared for the express purpose of supporting or opposing a motion for summary judgment may be considered by the court while testimony taken under oath at a deposition may not be, providing the sworn testimony is in a form that demonstrates the material facts. Distinctions based on the general purposes of discovery depositions, as opposed to depositions taken to perpetuate testimony, have not been adopted in the Practice Book sections applicable to summary judgment. Indeed, it is the content of the particular sworn testimony, not generalizations about kinds of depositions, that is determinative of the adequacy of such support of the legal principles advanced in the motion. A party whose deposition testimony is at odds with the testimony that party intends to present at trial has an opportunity to file an affidavit in connection with the motion for summary judgment, since deposition testimony has not been held to be a conclusive judicial admission. See Conn. Gen. Stat. § 52-200; Espositov. Wethered, 4 Conn. App. 641, 645 (1985).
This court finds that the excerpts from the three depositions, for which both the cover page and court reporter's certifications are supplied, are submissions authorized by § 17-45 for use in supporting a motion for summary judgment. The other materials have not been authenticated or certified, and the court will not consider them in connection with this motion. Obviously, the court will not rely on narrative in briefs that is not supported by these sworn statements.
Existence of genuine issues of material facts
The plaintiffs contend that the facts as testified to by defendants Lowe and Lysobey support a finding of use of deadly force out of a malicious intent to harm or kill the plaintiffs, in retaliation for the occupants' conduct in leaving the scene of a vehicle stop and leading the police on a high speed chase along Interstate Route 95. The plaintiffs assert that the facts give rise to an inference that the police officers were not motivated by any actual threat to their own safety. Each plaintiff specifically alleges that defendants Lysobey and Lowe shot at the car with the purpose of harming its occupants. They claim that an CT Page 14156 inference to this effect is supported by the great number of shots fired and by the fact that Clark and Towns were wounded in the upper body, suggesting that the officers aimed to hit them and not the tires of the car. Additionally, the plaintiffs claim that circumstantial evidence belies Officer Lysobey's testimony that after the car in which the plaintiffs were riding had come to rest after hitting a tree on a traffic island at the end of a highway exit ramp, he saw the car back up and something come out of the window. While Officer Lysobey did not state that he believed the object to be a gun, he stated that he fired his gun because he saw the car backing up in the direction of Officer Lowe as an unidentifiable object was brought up to the window. Officer Lowe testified that he fired his gun after the other officer began shooting and the Towns car was backing up toward his police car, which he had exited with his police dog. In his deposition, Shamon Clark stated that the Towns car had no ignition key and that Towns had been operating it by manipulating the metal within the ignition/steering column with his hands. He stated that after the collision with the tree, the car stalled and that Towns restarted it by "pulling up" some metal hanging out of the steering column. According to Clark's testimony, Towns then put the car into reverse and backed up very fast while Clark observed a police officer running up toward the passenger side of the car from the rear, with a gun in both hands. The parties agree that a gun was reported to have been located under Towns' belt when his body was recovered from the creek.
Clark stated that the police officer who stopped them in Norwalk looked into the car before Towns sped off, that Towns failed to stop even though the Norwalk police car and a state police car pursued the Towns car with lights and siren activated the entire way from Norwalk to Bridgeport, and that the police did not shoot until the Towns car started backing up after it hit the tree at the traffic island. As far as the excerpts submitted reveal, Clark was not asked at his deposition about anything having been raised to the window after the collision with the tree at the traffic island, nor was he asked about guns in the car. He has not filed any affidavit to contradict the police officers' version of the events in the deposition transcripts appended to the defendants' motion.
Plaintiff Jones states in the final paragraph of her brief that "[t]here are substantial questions of fact to be determined in this action." She does not set forth what those claimed genuine issues of fact are, and the only document appended in CT Page 14157 opposition to the motion for summary judgment is a copy of the counterclaim filed by the defendants. The text of the Jones brief indicates that the dispute is not one of fact but one of law: whether the conduct of the police at each stage was objectively reasonable in view of the circumstances, and whether it violated any rights of the plaintiff or constituted a breach of any duty by the defendants.
Plaintiff Hawthorne states in his brief that "there are a host of material disputed facts in contention in this litigation;" however, each of the items in the list that follows this statement is either an issue of law or a query as to a detail that is not put in dispute by any affidavit or other submission in form required by §§ 17-45 and 46:
 1. Did Off[icer] Lowe set this entire tragedy in motion based upon reasonable suspicion, probable cause or upon a motive grounded in his own desire to exert his power bereft of any legal justification?
 2. Was there any evidence that the plaintiffs had taken any aggressive action?
 3. Did the plaintiffs have the right to travel freely upon the highways, roads and streets of Norwalk in a lawful manner?
 4. Were the plaintiffs travelling upon the highways, roads and streets of Norwalk in a lawful manner prior to being stopped by Off[icer] Lowe?
 5. Where were the police standing at the time the gun fire began?
 6. Was the left rear passenger window of the car in which the plaintiffs were located rolled down or up?
 7. Was Lowe negligent and/or reckless and in violation of accepted police practice when he approached the plaintiff's car and thereby sandwiched himself between his own cruiser and Mr. Towns' car?
8. During the 25 minute chase from Norwalk to Bridgeport was there enough time to notify the towns of Westport, Fairfield and Bridgeport of the chase and enlist their CT Page 14158 support to safely bring it to a conclusion?
 9. Was the amount of deadly force utilized reasonable under all of the circumstances?
The only submission proffered by Hawthorne that meets the requirements of the applicable Practice Book sections is a portion of the transcript of the testimony of Shamon Clark. That testimony confirms that the Towns car in which he was riding on the night in question had a broken steering column and was not being operated with an ignition key. The remainder of the excerpts concern Clark's opinions and emotional reactions: for example, "Q. Did you feel as though you were getting a message that you were unwelcome in Norwalk? A. Yeah."
The only item in the above list that could potentially be characterized as a material fact is the position of the police when the gun fire began. Nothing in the deposition excerpts of Clark negates the deposition testimony of Lowe and Lysobey: Clark did not testify that Lowe was not between the Towns car and his own squad car; rather, Clark testified he saw one police car parked behind the Towns car and one officer approaching from the rear of the Towns car before the car backed off the traffic island. Since all plaintiffs allege, apparently based on Lowe's own testimony, that Lowe fired shots toward the Towns car, there is plainly no issue of fact that Lowe was present, whether or not Clark could testify as to his location in the vicinity of the traffic island.
Like plaintiff Hawthorne, plaintiff Clark lists a number of issues that he characterizes as factual disputes. The listed items are instead legal issues concerning the reasonableness of police conduct after the Towns car crashed at the traffic island:
 What is accepted police procedure at the conclusion of a police chase?
 Should the two officers in attendance (Lysobey and Lowe) (have) waited for back up?
 Did the officers call out to the occupants to get out of the car with their hands raised? Should they have done so?
What was the nature of the damage to defendant Lowe's police vehicle? CT Page 14159
 Was it minor, and what does that tend to show about the Cadillac's movement off the traffic island?
 What is the evidence, if any, of aggressive action from the occupants of the vehicle?
Was the passenger window up or was it rolled down?
 What was the defendants' purpose in firing at the front passenger window of the Cadillac, hitting Shamon Clark?
 Did other defendants act unreasonably in joining in the gunfire at that point or seconds thereafter?
 Was the type of gunfire appropriate; should it have been directed at the tires of the vehicle?
 Was the amount of deadly force used by the defendants reckless and irrational, since the parties were located on a "dead end" street, in a commercial area, bounded by a creek, and Long Island Sound?
 Was defendant Lowe negligent when he parked his vehicle at a right angle behind the Cadillac?
 Was defendant Lowe reckless and in violation of accepted police practice when he approached the plaintiff's car before other police were in a back up position and prior to making any attempts at verbal contact with the occupants?
At the conclusion of his brief, plaintiff Clark summarizes the claimed areas of factual dispute: "the nature of the conduct of the defendants at the traffic island, and the amount of gunfire used in the incident are issues of fact which preclude summary judgment on these claims."
Even as to the enumerated issues that could be characterized as factual issues, rather than legal determinations, plaintiff Clark has not submitted any affidavits or other materials in support of his position that material facts are in dispute. The only excerpt from his own deposition that he has appended to his brief in opposition to the motion for summary judgment is the single page in his testimony concerning Towns' invitation to him to go for a ride and his selection of the back seat for that CT Page 14160 ride. Clark has submitted nothing to contradict the Lowe and Lysobey testimony as to the number of shots fired or what, if anything, the officers said at the traffic island.
Factual sequence and claims
The plaintiffs acknowledge that their complaints allege several discrete, separable instances of police conduct that may be viewed as separate acts for purposes of liability. The court understands their point that even if the conduct in one segment of the events does not support a cause of action, the evidence concerning that phase may be relevant to the claims involving other phases. The instances or phases are as follows:
1. the initial stop of the Towns car in Norwalk;
2. the pursuit of the Towns car from Norwalk at high speed;
 3. the shooting at the Towns car when it backed up at the traffic island.
The court will discuss the plaintiffs' constitutional claims with regard to each of these phases of the events.
Uncontradicted facts
The court finds that in regard to the claims that the stop and chase along Interstate 95 constituted civil rights violations, the plaintiffs have not demonstrated the existence of any disputed issues concerning the facts material to their claims. The actual situation is that the facts are not in dispute, but the legal significance of the police conduct, a legal issue, is. The uncontradicted facts against which the legal claims must be assessed are as follows. (The following summary is taken from the most part from the statement of the facts in the brief filed by plaintiff Clark in opposition to the motion for summary judgment.) The court does not include in these facts any facts concerning the position of the Lowe police vehicle when the Towns car backed up, nor any other such information concerning the fears or state of mind of Lowe and Lysobey. Such information has not been verified by Clark, and, in view of the fact that these details cannot be viewed as uncontroverted, the court will not rely on them in assessing the defendant's claims of immunity.
Between 1 a.m. and 2 a.m. on February 12, 1992, Shamon Clark, CT Page 14161 age thirteen, and Corey Jones, age 12, were passengers in a 1980 black Cadillac with New York license plates driven by Michael Towns, an adult male. A police car driven by defendant Lowe, an officer in the Norwalk Police Department, pulled Towns over on a side street in Norwalk near an entrance to Interstate 95 when the Towns car "quickly change(d) directions" after its driver noticed the police officer. Officer Lowe noticed as he followed the car that the trunk was `bouncing" and not secured, an indication of car theft, and that the windows were so heavily tinted they were almost opaque. Officer Lowe radioed in the New York license plate number and learned that the police database did not list the car as stolen. Officer Lowe approached the stopped Cadillac and looked in, decided that he should call for assistance, and then returned to his police car. His report does not indicate that he said anything to Towns, who did not wait, but drove away. Lowe pursued the Towns car with lights and siren flashing. It did not stop but continued on to Interstate 95.
Lowe and other police cars pursued the Towns car at high speeds from Norwalk to exit 26 off of Interstate 95 in Bridgeport. Clark's deposition testimony was that the Towns car then went on to a traffic island and hit a tree, that Towns restarted the car after it stalled and backed it up at a high rate of speed. Clark testified that gunfire began from police officers as the car backed up. Clark stated that Jones yelled that he wanted to get out of the car but that Towns did not stop the car. Clark, the front seat passenger, testified that he was hit in the shoulder by a bullet, and that Towns said, as he was fleeing from the traffic island, that he had been hit as well. Towns sped on, and the car slid into a fence and then into a creek, from which Clark was rescued by a State Trooper and in which Towns and Jones drowned.
Only with regard to the claim that defendants Lysobey and Lowe used excessive force by shooting with the purpose of harming, not simply of stopping the occupants of the car, have material issues of fact been shown to exist with regard to the plaintiffs' constitutional claims.
Initial stop
As to the initial stop, neither plaintiff Jones nor plaintiff Clark has briefed the issue, and they appear to acknowledge that the defendants have accurately characterized the initial stop as one authorized under Terry v. Ohio, 392 U.S. 1 (1968), and its CT Page 14162 progeny. The officer noted an unusual maneuver by Towns of trying to get away from a police officer upon seeing him, and he saw tinted glass that could constitute a motor vehicle violation. He followed the Towns car longs enough to see that the truck was exhibiting the characteristics of a car whose locks had been damaged during a theft.
This court concludes that no reasonable jury could find that the initial stop constituted a violation of the plaintiffs' right not to be subject to unreasonable seizure. Plaintiff Hawthorne's theory that the stop interfered with Michael Towns' constitutional right to travel merely rephrases the claim that the stop was a seizure, that is, an interruption of his freedom of movement.
Pursuit of the Towns Car
Plaintiff Jones has offered no opposition to the defendants' claim that the pursuit of the car driven by Towns did not violate the constitutional rights of any of the occupants. Plaintiff Clark acknowledges that "[b]ased on the recent Supreme Court decision in County of Sacramento v. Lewis, it is difficult to maintain that the defendants' conduct during the police chase violated anyone's constitutional rights. 118 S.Ct. 1708 (1998)." Hawthorne argues that all phases of the police attempt to stop Towns violated his constitutional rights.
As the United States Court of Appeals for the Second Circuit observed in Medeiros v. O'Connell, 150 F.3d 164, 167, Docket No. 97-7352 (2d Cir. 1998), "[t]he Fourth Amendment prohibits unreasonable seizures; it is not a general prohibition of all conduct that may be deemed unreasonable, unjustified, or outrageous. See Carter v. Buscher, 973 F.3d 1328, 1332 (7th Cir. 1992)." The Supreme Court ruled in California v. Hodari D.,499 U.S. 621, 626 (1991), that a police pursuit attempting to seize a person does not amount to a seizure within the meaning of the Fourth Amendment. In County of Sacramento v. Lewis,118 S.Ct. 1708 (1998), a claim was brought on behalf of a passenger on a motorcycle that went out of control during a police chase, causing the death of the passenger when he was thrown from the vehicle. The Court analyzed this claim according to substantive due process principles. The court ruled that the applicable standard as to police chases "with no intent to harm suspects physically is not recklessness nor malicious disregard for the safety of those pursued but whether the conduct of the police CT Page 14163 `shocks the conscience.'" 118 S.Ct. 1717.
As to the portion of the pursuit up to the point of the police firing shots, the plaintiffs in the present case allege merely a long and persistent pursuit. The factual submissions establish that the pursuit from Norwalk until the shooting began involved no conduct that could be characterized by a reasonable jury as "shocking the conscience," since the Supreme Court has acknowledged that the courts should not announce a principle that in some cases a suspect is free to ignore a lawful police command to stop (a request made by Officer Lowe's continued signals as he pursued the car). "[A]ny suggestion that suspects may ignore a lawful command to stop and then sue for damages sustained in an ensuing chase might cause suspects to flee more often, increasing accidents of the kind which occurred here." 112 S.Ct. 1722. It is thus not a violation of substantive due process for police to continue a chase unless, under the circumstances, the police conduct "shocks the conscience."
Use of gunfire
The plaintiffs allege that when the defendants Lowe and Lysobey fired upon them at the traffic island and as the car left the traffic island the officers did so for the purpose of harming them, rather than for the purpose of getting the driver to stop the car and submit to the authority of the police. The plaintiffs point out that such a purpose is supported by the facts that both Towns and Clark were wounded in their upper bodies, indicating, they claim, that these defendants were shooting high, to wound the occupants, even the passengers, rather than low, to stop the progress of the car. In their depositions, the two officers state that they opened fire because they feared for their safety when the car backed up quickly. Officer Lysobey stated that he thought he saw something emerging at the passenger window of the car. Neither officer was asked in the deposition, and neither filed an affidavit to explain whether they were shooting at the occupants of the car, including the passengers. They have not offered any sworn statements denying a purpose to harm the occupants. They have not shown what the facts were with regard to any threat to them from the car as the car backed up.
In County of Sacramento, supra, the Supreme Court noted that police officers are not liable for violations either of the Fourth or of the Fourteenth Amendment unless their conduct goes beyond recklessness and is so arbitrary that it is "shocking to CT Page 14164 the conscience." The Court confined this standard, however, to conduct that had only the result, but not the purpose, of harming those pursued: "[a]ccordingly, we hold that high speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by actions under § 1983." County ofSacramento v. Lewis, 118 S.Ct. 1720. The implication is that if the police pursue or use gunfire not for the legitimate purpose of stopping a crime or enforcing submission to lawful authority, see Tennessee v. Garner, 471 U.S. 1 (1985), but to punish a suspect on the spot for having fled, they may be liable for violation of the applicable constitutional rights of those harmed by such purposeful action.
The defendants' reliance on cases such as Medeiros v.O'Connell, supra, 150 F.3d 164, concerning the wounding of hostages or bystanders by police officers pursuing the perpetrator is misplaced. In such cases, there is no basis for any inference that the police have the purpose of harming the hostages or bystanders, whom they know to be blameless. Because of the known identity of the hostage or bystander as an innocent party, no reasonable jury could infer such a purpose. In the case before this court, the identity of the passengers in the car was not known to the police. While they may have been observed by Officer Lowe to be juveniles, he had no information whether they were involved in what he suspected to be a car theft and it is not clear that he did not regard them as suspects. Unlike the clearly benign police purpose with regard to the students on the hijacked school bus at issue in Medeiros, supra, there is no certainty as to the police purpose with regard to Clark and Jones.
There is plainly a material issue, as to the claims that relate to the use of gunfire, concerning the purpose and intent of defendants Lowe and Lysobey. As the Connecticut Supreme Court stated in Suarez v. Dickmont Plastics, supra, 229 Conn. 113, the issue of purpose or intent is "uniquely a fact question for the trier of fact after considering all the relevant evidence."
Civil rights claims against other individual police officers
The plaintiffs have offered no argument that defendants other than Lowe and Lysobey engaged in conduct that meets the standard announced in County of Sacramento v. Lewis, 118 S.Ct. 1708. The allegations in their complaints do not allege any purpose on the CT Page 14165 part of these defendants to harm the occupants of the car. Summary judgment is granted on the civil rights claims against defendants Edward Schwartz, Dana McIndoe, Carl LaBianca, and the City of Norwalk. Summary judgment is granted as to the civil rights claims directed at the initial stop and the pursuit of the car in which plaintiff Clark and the other plaintiffs' decedents were riding. It is denied as to the claim of use of excessive force in shooting at the traffic island and as the Towns car left the traffic island.
Claims against the City of Norwalk
The plaintiffs have claimed that the City of Norwalk was negligent in various respects with regard to the conduct of the police officers who are individual defendants. The plaintiffs have not alleged a duty to indemnify the individual defendants pursuant to Conn. Gen. Stat. § 7-465. (While Plaintiff Jones alleges the giving of a statutory notice, her complaint does not include a count based on indemnification pursuant to § 7-465.)
All of the actions that the plaintiffs allege in their common law claims against the City of Norwalk are claims of negligence or other deficiencies in the operation of the police department and overseeing of the activities of the police officers. A municipality is immune from liability for the performance of its discretionary governmental functions. Conn. Gen. Stat. § 52-557n; Williams v. New Haven, 243 Conn. 763, 764 (1988);Elliott v. City of Waterbury, 245 Conn. 385 (1998). Performance of police functions of the kind alleged are both governmental and discretionary in nature. Gordon v. Bridgeport Housing Authority,208 Conn. 161, 180 (198S); Hannon v. Waterbury, 106 Conn. 13, 16
(1927). The City of Norwalk is immune from the common law claims of the plaintiffs, and judgment shall enter in favor of this defendant as to all counts of the complaints in which the plaintiffs allege negligence and other common law claims against it.
In addition to their common law claims, the plaintiffs have asserted that the City of Norwalk violated their constitutional rights by failing to train and supervise its police officers adequately and appropriately. The City acknowledges that a city may, indeed, be found liable upon such a claim, but it argues that the plaintiffs have not demonstrated what was deficient in the training or supervision involved in the events at issue. CT Page 14166
The City overlooks the requirement that the party moving for summary judgment establish the facts that entitle it to judgment as a matter of law. Nothing in the submissions of the City indicates what training was provided to the defendant officers concerning the use of gunfire where a person fails to obey a police order to stop. The party that seeks summary judgment has the duty of showing what the facts are and that the facts entitle the movant to judgment as a matter of law. Practice Book § 17-49; Doty v. Mucci, 238 Conn. 805-06.
The City has failed to show what the facts are with regard to the adequacy of training and supervision, and has therefore failed to establish that it is entitled to judgment on the constitutional claims based on those allegations.
Common law claims against officers
The plaintiffs have alleged that the police officers named as defendants were negligent, intentionally inflicted emotional distress upon them, committed assault and battery on them, and wrongfully caused the deaths of Michael Towns and Shamon Clark. The undisputed facts concerning the activities of defendants Lowe and Lysobey indicate that they were engaged in police functions of a discretionary nature. The law recognizes qualified immunity against liability for negligence by governmental employees.Mulligan v. Rioux, 229 Conn. 716, 728 (1994). The plaintiffs claim that the defendants' conduct comes within either one of two exceptions to such immunity: the exception for failure to aid an identifiable victim and the exception for alleged acts involving malice or intent to injure. Mulligan v. Rioux, 229 Conn. 731;DeLaurentis v. New Haven, 220 Conn. 225, 242-43 (1991).
The issue of intent precludes summary judgment as to the conduct of defendants Lowe and Lysobey on the latter exception. As has been discussed above in connection with the claim of violation of the right to substantive due process arising from use of excessive force, the height of the shots fired would arguably support an inference that the purpose of these two officers was to harm the occupants of the car, not simply to stop the progress of the car.
With regard to the claims of negligence against defendants McIndoe, LaBianca, and Schwartz, the plaintiffs claim that these defendants were in a position to prevent the use of excessive CT Page 14167 force and failed to do so. The Connecticut Supreme Court has ruled that where the claimed duty of a police officer is a general duty to the public, immunity applies. Where, however, the circumstances are such that the police officer may have a duty to a particular person that duty arises out of the foreseeability of imminent harm to an identifiable person if the officer does not intervene, the Court recognized a private duty and found that a directed verdict on a defense of governmental immunity was inappropriate. See Shore v. Stonington, 187 Conn. 147, 156
(1982); Sestito v. Groton, 178 Conn. 520, 527 (1979).
With regard to the common law claims against the other police officers, the movants have simply failed to submit any materials of the kind approved in § 17-45 that establish the facts regarding the conduct of defendants McIndoe, LaBianca, and Schwartz. None of these defendants has filed an affidavit averring what his actions were, and the depositions of Lowe and Lysobey do not state any observations concerning their conduct. The burden upon a motion for summary judgment is on the movant to show what the facts are and that they entitle the movant to judgment as a matter of law. Because of the lack of any documentary submissions concerning the participation of McIndoe, LaBianco and Schwartz, this court has no factual basis with which it can determine whether the principles of immunity apply, or whether the defendants breached a private duty under the circumstances. The situation was one in which the occupants of the car could be seen as persons in imminent danger of harm from the officers who had drawn their guns, and there is therefore a possibility that a private duty, rather than a governmental duty, existed.
The movants have undertaken no legal analysis of the claims for wrongful death, intentional infliction of emotion distress, and assault and battery against the individual police officers. In the absence of any affidavits or other competent submissions to establish what the facts are as to the claims against the individual police officers, this court cannot agree with the movants' conclusion that they are entitled to judgment as a matter of law, especially since principles of governmental immunity do not apply to intentional torts. Evon v. Andrews,211 Conn. 501 (1989).
Conclusion
The motion for summary judgment is granted as to the CT Page 14168 following:
 1. All of the plaintiffs' civil rights claims against defendants Lowe and Lysobey arising from the initial motor vehicle stop and the police chase up to the point the car came to rest on a traffic island.
 2. All civil rights claims against defendants Schwartz, McIndoe and LaBianca.
 3. All claims against the City of Norwalk other than the claim of constitutional violations arising from negligent training and supervision.
 4. The claims of negligence against defendants Lowe and Lysobey.
The motion for summary judgment is denied with regard to all other claims.
Beverly J. Hodgson Judge of the Superior Court Complex Litigation Docket