TONISHA SPEARS ET AL. *v.* BENIGA GARCIA ET AL.
(AC 20487)

Lavery, C. J., and Schaller and Spear, Js.

---

Argued June 13—officially released November 6, 2001

*Karen E. Souza*, with whom, on the brief, was *Alan E. Silver*, for the appellants (plaintiffs).

*Arthur C. Laske III*, assistant city attorney, for the appellees (defendant city of Bridgeport et al.).

*Opinion*

SCHALLER, J. In this negligence action, the plaintiffs, Tonisha Spears and Medina Spears,[1] appeal from the judgment of the trial court granting summary judgment in favor of the defendants, the city of Bridgeport and

---

[1] Medina Spears brought this action as parent and next friend of her minor daughter, Tonisha Spears. Medina Spears also brought this action on her own behalf for damages arising from the minor plaintiff's injuries.

the Bridgeport fire department,[2] on the ground of governmental immunity. The plaintiffs claim on appeal that the court improperly determined, according to its interpretation of *Williams* v. *New Haven*, 243 Conn. 763, 707 A.2d 1251 (1998), that the plaintiffs' failure to plead General Statutes § 52-557n[3] in their complaint was fatal to their cause of action even though the requirements of Practice Book § 10-3 (a) are directory. We reverse the judgment of the trial court.

The following facts and procedural history are necessary to our resolution of the plaintiffs' appeal. The plaintiffs brought this action against the defendants for injuries that Tonisha Spears sustained on June 28, 1994. On that date, a motor vehicle struck her after she was pushed into the road by a high pressure stream of water flowing from a fire hydrant, which had been opened by an unauthorized person. The hydrant did not have a

[2] In their original complaint, the plaintiffs also named Beniga Garcia as a defendant. Garcia was the operator of the motor vehicle that struck Tonisha Spears. The plaintiffs, however, later withdrew their claims as to Garcia. We refer in this opinion to the city and its fire department as the defendants.

[3] General Statutes § 52-557n provides in relevant part: "Liability of political subdivision and its employees, officers and agents. Liability of members of local boards and commissions. (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . ."

safety device or a cap to prevent unauthorized openings as of the date of the incident.

In their complaint, the plaintiffs alleged that the defendants were negligent for failing to install safety devices on the hydrant and for failing to inspect it. The plaintiffs' complaint, however, did not mention any statutory authority that abrogated the defendants' governmental immunity. The defendants, in their answer, pleaded that immunity as a special defense.

On December 16, 1998, the defendants filed a motion for summary judgment, claiming that the plaintiffs' action was barred by the doctrine of governmental immunity because they failed to cite any statute in their complaint that abrogated the immunity. To advance that position, the defendants cited *Williams* v. *New Haven*, supra, 243 Conn. 763, in their memorandum of law supporting the motion for summary judgment. The plaintiffs, in response, filed a memorandum in opposition to the motion for summary judgment. In the memorandum, the plaintiffs mentioned for the first time § 52-557n as abrogating the defendants' immunity. The plaintiffs also distinguished *Williams*, noting that the plaintiffs in that case never relied on § 52-557n throughout the proceedings. See id., 766. In contrast, the plaintiffs here emphasize that although they did not specifically plead the statute in the complaint, the defendants were sufficiently apprised of the statute in the plaintiffs' memorandum.

During oral arguments on the motion for summary judgment, the parties reiterated their positions. The defendants also claimed at oral argument that pursuant to Practice Book § 10-3 (a), "[w]hen any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number." The court, in response, noted that the language of that section has been interpreted to be directory rather than mandatory.

In addition, the court found the facts of the present case to be remarkably similar to those of *Williams* and that in both *Williams* and the present case, the plaintiffs relied solely on their claim of common-law negligence and, at no time, advanced any statutory basis for the defendants' liability.

The court granted the defendants' motion, holding that although Practice Book § 10-3 (a) has been read as directory rather than mandatory, *Williams* is controlling on the present case. This appeal followed.

## I

The plaintiffs claim that the court improperly determined, on the basis of its interpretation of *Williams* v. *New Haven*, supra, 243 Conn. 763, that the plaintiffs' failure to plead § 52-557n in their complaint was fatal to their cause of action even though the requirements of Practice Book § 10-3 (a) are directory. To support their claim, the plaintiffs assert that the facts of their case are distinguishable from those in *Williams* and that the court's interpretation is inconsistent with Practice Book § 10-3 (a). We agree.

As an initial matter, we set forth our standard of review applicable to a trial court's decision regarding a motion for summary judgment. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . *Tarzia* v. *Great Atlantic & Pacific Tea Co.*,

52 Conn. App. 136, 145, 727 A.2d 219 (1999) [appeal dismissed, 254 Conn. 786, 759 A.2d 502 (2000)].

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 693, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). Because the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995)." (Internal quotation marks omitted.) *Kroll* v. *Steere*, 60 Conn. App. 376, 380–81, 759 A.2d 541, cert. denied, 255 Conn. 909, 763 A.2d 1035 (2000). We must determine, therefore, whether the court's interpretation of *Williams* and Practice Book § 10-3 (a) was legally correct.

We begin by examining our Supreme Court's decision in *Williams* v. *New Haven*, supra, 243 Conn. 763. In that case, the plaintiffs sought to recover damages against the defendant city of New Haven for injuries that the minor plaintiff sustained when he was struck by a high pressure stream of water flowing from a fire hydrant, which had been opened by an unauthorized person. Id., 764. In their complaint, the plaintiffs alleged common-law negligence against the defendant, but failed to cite therein any authority abrogating the defendant's governmental immunity. Id., 766. The case proceeded to the jury, and it found in favor of the plaintiffs. Id., 764. Subsequently, the defendant appealed, claiming that the doctrine of governmental immunity applied and that the plaintiffs did not cite any statute abrogating that immunity. Id. Our Supreme Court noted that "it is clear that a municipality enjoys governmental immunity

for common-law negligence unless a statute has limited or abrogated that immunity . . . ." Id., 769. It held that the plaintiffs' action must fail because "[they did] not *rely* on any such statute . . . ." (Emphasis added.) Id. In so holding, the Supreme Court emphasized that "throughout the entire course of this litigation, including the allegations of the complaint, the trial and this appeal, the plaintiffs have relied solely on their claim of common-law negligence on the part of the defendant. At no time have they advanced any statute as a basis for the liability of the defendant in this case." Id., 766. The defendants in the present case argue that *Williams* stands for the proposition that a statute abrogating governmental immunity must actually be pleaded, not simply relied on at some point in the proceedings. We disagree.

Recently, this court in *Colon* v. *Board of Education*, 60 Conn. App. 178, 188 n.4, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000), had the opportunity to discuss *Williams* as it pertains to the present matter. The defendant in *Colon* argued, as an alternate ground for affirmance, that on the basis of *Williams*, governmental immunity barred recovery because the plaintiffs did not rely on any statute that abrogates such immunity. We rejected the defendant's argument and stated: "In this case, unlike in *Williams*, the plaintiffs raised General Statutes § 52-557n, which sets forth general principles of municipal liability and immunity, in opposing the defendant's motion for summary judgment. While the defendant is correct in pointing out that the plaintiffs did not cite § 52-557n in their complaint or amend their complaint to include such statute, the plaintiffs' failure to do so does not necessarily preclude recovery. Although Practice Book § 10-3 (a) provides that when any claim in a complaint is grounded on a statute, the statute shall be specifically identified by its number, this rule has been construed as directory rather

than mandatory. *Criscuolo* v. *Mauro Motors, Inc.*, 58 Conn. App. 537, 545, 754 A.2d 810 (2000). As long as the defendant is sufficiently apprised of the nature of the action; *Goodrich* v. *Diodato*, 48 Conn. App. 436, 443, 710 A.2d 818 (1998); the failure to comply with the directive of Practice Book § 10-3 (a) will not bar recovery. See *Criscuolo* v. *Mauro Motors, Inc.*, supra, 546–47." *Colon* v. *Board of Education*, supra, 188 n.4. It is true that this language in *Colon* is dictum, but we nonetheless view its interpretation as sound. Any other interpretation of *Williams* would make it inconsistent with Practice Book § 10-3 (a). See *Fahy* v. *Fahy*, 227 Conn. 505, 513–14, 630 A.2d 1328 (1993) ("courts must discharge their responsibility . . . to assure that the body of the law—both common and statutory—remains coherent and consistent"). We therefore hold that under *Williams*, although a plaintiff should plead a statute in a complaint that abrogates governmental immunity, failing to do so will not necessarily bar recovery as long as the defendants are *sufficiently apprised* of the applicable statute during the course of the proceedings.

The facts of the present case are distinguishable from those in *Williams*. Here, the plaintiffs did fail to plead § 52-557n in their complaint. Unlike the plaintiffs in *Williams*, however, the plaintiffs in the present case relied on the statute in their memorandum of law in opposition to the motion for summary judgment and in oral argument before the trial court. That sufficiently apprised the defendants that the plaintiffs were relying on § 52-557n to abrogate governmental immunity. Under the circumstances of this case, the defendants cannot complain of unfair surprise. We conclude, therefore, that the trial court improperly granted the defendants' motion for summary judgment on the basis of governmental immunity and the plaintiffs' failure to plead the statute abrogating that immunity.

## II

As an alternate ground for affirmance, the defendants argue that the plaintiffs cannot rely on § 52-557n to bring a direct cause of action for negligence against a municipality. The defendants note that allowing such an action is a significant departure from the general common-law principle of governmental immunity from vicarious liability. As such, the defendants argue that this immunity cannot be abrogated unless there is clear statutory language to that effect, which they contend is lacking in § 52-557n (a). We are not persuaded.

The defendants correctly point out that allowing a direct cause of action against a municipality is a significant departure from general common-law principles. "A municipality itself was generally immune from liability for its tortious acts at common law . . . ." (Citation omitted.) *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 165, 544 A.2d 1185 (1988). Furthermore, "[a]t common law, municipal officers were liable for their own torts, but the municipality, their municipal 'master,' was not vicariously liable for those torts." *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 193, 592 A.2d 912 (1991). "Governmental immunity may, however, be abrogated by statute. The state legislature possesses the authority to abrogate any governmental immunity that the common law gives to municipalities. *Ryszkiewicz* v. *New Britain*, 193 Conn. 589, 593, 479 A.2d 793 (1984). The general rule developed in the case law is that a municipality is immune from liability unless the legislature has enacted a statute abrogating that immunity. *Williams* v. *New Haven*, supra, 243 Conn. 766–67. Statutes that abrogate or modify governmental immunity are to be strictly construed. . . . This rule of construction stems from the basic principle that when a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified,

repeated or enlarged in its scope by the mechanics of construction." (Internal quotation marks omitted.) *Tryon* v. *North Branford*, 58 Conn. App. 702, 720, 755 A.2d 317 (2000).

"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. . . . [W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. . . . When the language of a statute is unclear, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve." (Citation omitted; internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 73–74, 689 A.2d 1097 (1997); see also *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 187. Having those well established canons of statutory construction in mind, we now turn to the language of the statute.

Section 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . (A) [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." Contrary to the defendants' argument, we conclude that the language of § 52-557n (a) is clear and unambiguous with respect to vicarious liability. Such language plainly indicates the legislature's intent to abrogate governmental immunity that the common law gives to municipalities with respect to vicarious liability.[4] Because the

---

[4] Indeed, the general trend in jurisdictions across the country has been away from governmental immunity; see *Antinerella* v. *Rioux*, 229 Conn. 479, 497, 642 A.2d 699 (1994); with many jurisdictions holding a municipality

words of the statute themselves are clear on the matter, we need not embark on an inquiry into the legislative history.[5]

The defendants also contend that allowing a direct action under § 52-557n (a) would be inconsistent with General Statutes § 7-465,[6] under which a municipal employer may be liable pursuant to the indemnity doctrine for judgments rendered against its employees under certain circumstances. According to the defendants, allowing a direct action under § 52-557n (a) would circumvent the six month filing period under § 7-465 because a party would rely on the former option so as to avoid the time limit in the latter. We do not agree.

liable for the torts of its employees that occur within the course of employment. "Municipal corporations generally fall within the rule that the superior or employer must answer civilly for the negligence or want of skill of his or her agent or servant in the course of the agent's employment. In other words, the rule of respondeat superior applies to municipal corporations." 18 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1993) § 53.65, p. 437.

[5] The defendants argue that we should nonetheless delve into the legislative history because of the statute's significant departure from the common law. To support that argument, they cite *Elliott* v. *Waterbury*, 245 Conn. 385, 715 A.2d 27 (1998), in which our Supreme Court examined the legislative history to interpret General Statutes § 52-557n (b) (6). That case, however, is distinguishable because the court noted that "[n]either the plaintiff nor the defendants [claimed] that the language of the provision alone . . . dictates adoption of their respective proposed interpretations. Likewise, all parties tacitly [admitted] that it could support either the plaintiff's or the defendants' interpretation." *Elliott* v. *Waterbury*, supra, 395. In contrast, the plaintiffs in the present case argue, and we agree, that the language of § 52-557n (a) is clear and unambiguous.

[6] General Statutes § 7-465 (a) provides in relevant part: "Any town, city or borough . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay . . . for damages awarded for infringement of any person's civil rights or for physical damages to person or property . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . ."

We conclude that both statutes can be read to coexist. Under § 7-465, a municipal employer must indemnify its employees for judgment rendered against them under certain circumstances. Pursuant to § 52-557n (a), governmental immunity is abrogated for a direct cause of action under certain circumstances. See General Statutes § 52-557n (a). Those circumstances include "[t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." General Statutes § 52-557n (a) (1) (A). Subsections (a) and (b), however, set forth several circumstances under which a municipality shall not be liable. See General Statutes § 52-557n (a) and (b). Nowhere in that exhaustive list of exclusions does the legislature mention § 7-465. Had the legislature intended to force the parties to comply with the filing requirement for indemnification under § 7-465 before resorting to § 52-557n (a), it certainly could have drawn that distinction in the text of the latter statute. See *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 195, 663 A.2d 1001 (1995) ("[w]e will not impute to the legislature an intent that is not apparent from unambiguous statutory language in the absence of a compelling reason to do so"). Those statutes can be read to coexist in that parties may choose to rely on either statute as long as they meet the requirements therein. We conclude that the plaintiffs can rely on § 52-557n to bring a direct cause of action for negligence against a municipality and, thus, reject the defendants' alternate ground for affirmance.

The judgment is reversed and the case is remanded with direction to deny the motion for summary judgment and for further proceedings according to law.

In this opinion the other judges concurred.